**UNITED STATES of America,**
**Plaintiff,**

v.

**RELAXACIZOR, INC., et al., Defendants.**

**Civ. No. 66-1141.**

United States District Court,
C. D. California.

April 14, 1970.

Wm. Matthew Byrne, Jr., U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief Trial Counsel, Frederick M. Bro-sio, Jr., Asst. U. S. Atty., Chief, Civ. Div., Arthur Dickerman, Food & Drug Administration, Los Angeles, Cal., for plaintiff.

Ball, Hunt & Hart, by Joseph A. Ball and Frank C. Aldrich, Long Beach, Cal., Joseph Ostrow, Los Angeles, Cal., Kleinfeld & Kaplan, Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

WILLIAM P. GRAY, District Judge.

1. Defendant Eastwood General Corporation is a corporation organized under the laws of the State of California. Its principal place of business is at 980 N. La Cienega Boulevard, Los Angeles, California. The name of this firm formerly was Relaxacizor, Inc., and this name will be used throughout these findings.

2. Defendant Relaxacizor Sales, Inc., is a corporation organized under the laws of the State of Delaware.

3. Defendant Burton Skiles is President of Relaxacizor, Inc., and Relaxacizor Sales, Inc., and has held these positions for over 20 years. He owns 100% of the stock of Relaxacizor, Inc., and 80% of the stock of Relaxacizor Sales, Inc.

4. From 1955 until the time she testified in 1969, defendant Marlys T. Aldrich was Vice President of Relaxacizor, Inc., and Relaxacizor Sales, Inc. She became General Manager in 1965. She is no longer affiliated with Relaxacizor, Inc.

5. Defendant E. Ric Clark was Vice President and Director of Advertising of Relaxacizor, Inc., for many years. At the time of the trial he was no longer an officer or employee of Relaxacizor, Inc., but was a Director of Relaxacizor Sales, Inc. He owns 20% of the stock of Relaxacizor Sales, Inc.

6. Said defendants are now and have been engaged in the business of promoting, selling, and shipping in interstate commerce a device designated as Relaxacizor. Said device is manufactured in Chicago, Illinois, by Eastwood Industries,

Inc., a wholly owned subsidiary of Relaxacizor, Inc., and is then distributed throughout the country at the direction of Relaxacizor, Inc., or Relaxacizor Sales, Inc.

7. The labeling of Relaxacizor represents and suggests that the device, when used in accordance with the instruction booklet that accompanies it, is effective as a girth reducer and provides the user with a safe, comfortable, and pleasant mode of exercise.

8. The labeling of Relaxacizor further represents and suggests that the device is suitable and safe for use in the manner suggested in the instruction booklet, without medical supervision, on many areas of the body. The Relaxacizor is intended to affect the structure and functions of the body.

9. The Relaxacizor device provides electrical currents which cause intermittent contraction of the muscles beneath the skin area to which the pads of the device are applied. The device causes 40 muscular contractions per minute in the muscles affected by the motor nerve points in the area of each pad. The directions for use recommend use of the device at least 30 minutes daily for each figure placement area, and suggest that the user may use it for longer periods if he wishes. The device is offered in a number of different models which are powered either by battery or household current.

10. The Relaxacizors in evidence have from 1 to 6 channels. Two pads (or electrodes) are connected by wires to each channel. The user applies from 2 to 12 pads to various parts of his body. For each channel there is a dial which purports to control the intensity of the electrical current flowing into the body between the two pads connected to that channel.

11. The human body to which the Relaxacizor pads are applied provides the pathway for the flow of the electrical current emitted by the Relaxacizor. The human body thus completes the electrical circuit between each set of pads.

12. The quantity of current flowing through a circuit depends in part upon the electrical impedance which it encounters. The electrical impedance of the human body varies according to the pressure applied to the Relaxacizor pads, the manner of application, the moisture present beneath the pads, the quantity and kind of hair under the pads, the salt content of the skin, the smoothness of the skin, the thickness of the skin, the integrity of the skin, the tightness of the fit of the electrodes, the manner of pad placements on the body, the location of pad placements on the body, and the size and the condition of the body. These variables are independent of all other variables which can also affect the Relaxacizor current applied to the body.

13. All of the Relaxacizors are subject to variations in current output by reason, among others, of electrical design, interdependence of dials, nonlinearity, newness of battery, and simultaneous use of other electrical appliances using the same power source.

14. Because of the many variables, the current outputs of the Relaxacizors are not constant. There is a substantial voltage and milliamperage range in the electrical output of each machine when measured at the body.

15. The involuntary muscle contractions caused by Relaxacizor are abnormal and cannot be equated with ordinary exercise. The Relaxacizor actuates small groups of muscles without body mechanisms that normally protect against stress. There may be a lack of the usual warning signs of fatigue and pain which signal the need to stop. The damage caused by Relaxacizor may occur before the warning of pain or fatigue. In the use of the machine, there is lacking the rhythmic coordination and balance of movement characteristic of ordinary exercise. The contractions caused by Relaxacizor are unnatural and spasm-like, tending to pull one side more than the other, and create a jerking sensation.

16. There are four principal ways by which use of the Relaxacizor may adversely affect health:

(a) *The electrical current produced by the machine* exposes the user to repetitive electrical shocks and the possibility of pain and other harm especially to the heart if the pads and belts are applied where cardiovascular hazard may be involved.

(b) *The mechanical effects of the machine*—i. e., the unbalanced, asymmetrical, localized, tetanic, and spasmlike contractions—cause abnormal pulls, displacements, jerking, and strains which may result in pain and other harm.

(c) *The emotional effects* of the repetitive electrical shocks may generate nervousness, anxiety, and fear which in turn may produce abnormal physiological responses.

(d) *The localized skin effects,* which may be due to friction, pressure, heat, and perspiration under the pads and belts, include the triggering of dormant skin abnormalities and the rupture of blood vessels within the skin.

In some users, there may be a combination of two or more of these means of producing harmful effects. Moreover, in each instance of use, the possibility of harm is enhanced by the multiple, complex, and variable factors which come into play when the machine is applied to the human body; by the varying physical and emotional states of the user; and by the user's ignorance of the electrical, mechanical, and physiological phenomena involved.

17. The firing of externally induced charges of electricity indiscriminately into the body, as is done by Relaxacizor, is inherently dangerous. Electrical current should not be introduced into the body unless there are compelling reasons to do so in the judgment of a skilled physician.

18. The electrical current which Relaxacizor can deliver to an average individual at a chest placement is inherently dangerous to the hearts of some users because such current approximates that produced by an external pacemaker capable of achieving threshold stimulation of the heart. If the current enters the heart at a critical time in the heart's electrical cycle it can upset the heart's rhythm. Upsetting the heart's rhythm may trigger serious or fatal disorders of the heart in a person with a normal heart and particularly in persons with diseased hearts where sensitivity of the heart to electrical stimulation is greatly enhanced.

19. Portions of malignant tumors may flake off and enter the lymphatic system or bloodstream due to the trauma which Relaxacizor produces. Cancer cells that are otherwise dormant may be activated and spread by the sudden, violent, rapid, repetitive, and unnatural movements of internal organs and skin surfaces caused by the Relaxacizor. There are 1200 such movements per 30 minute treatment resulting in pressure on affected areas and internal organs. These movements are dangerous to the health of people who have cancer or incipient cancer.

20. The human body has many other disorders of varying severity and magnitude of which the owner of the body is often not aware. These include a wide spectrum of conditions in which the Relaxacizor is hazardous and contraindicated, such as intra-abdominal, gastrointestinal, orthopedic, muscular, neurological, vascular, dermatological, kidney, gynecological, and pelvic disorders, and pregnancy. In the presence of such conditions, the use of Relaxacizor sometimes results in actual and substantial harm.

21. The Relaxacizor is capable of producing the following reactions, among others, in susceptible persons:

Abdominal pain and cramps
Back pain
Breathing difficulty
Chest pain
Diarrhea
Dizziness
Electric shock
Fatigue
Groin pains

Headache
Hernia pain
Indigestion
Leg and thigh pain and cramps
Leg veins aggravated
Loss of hand control
Loss of consciousness
Nausea and vomiting
Neck pain
Nervousness
Numbness in arms
Numbness in legs
Pain in area of prior surgery
Paralysis
Permanent red mark on skin
Rash and itch
Red and blistered skin
Swallowing difficulty
Swelling
Urinary changes
Vaginal hemorrhage

22. The Relaxacizor may be capable of causing a miscarriage.

23. The Relaxacizor is capable of aggravating the following medical conditions, among others, in susceptible persons through use of the device under conditions of use prescribed in its labeling or under such conditions of use as are customary or usual:

Buerger's disease
Congenital skin disease
Epilepsy
Glomerulonephritis
Heart conditions
Hernia
Low back syndrome
Malignancies
Multiple sclerosis
Orthopedic conditions
Phlebothrombosis
Pylorospasm
Scalenus anticus syndrome
Spinal fusion
Thrombophlebitis
Tubo-ovarian abscess
Ulcers of stomach, legs, and skin
Vaginal hemorrhage
Varicose veins

25. The user is not competent to evaluate the effect of the Relaxacizor upon himself. Pain may not be a deterrent to users motivated to obtain maximum results from the machine. In some users, even if the machine is adjusted after pain has been experienced, the medical harm may have resulted.

26. The user cannot determine whether direct and immediate harm, or subtle and long-range adverse effects, may follow its use. Use of the Relaxacizor may jeopardize the health and even the life of the user in ways that may not be apparent to him.

27. Most physicians, including the doctor who has been medical consultant for Relaxacizor, Inc., for over 12 years, are not informed accurately regarding the electrical properties of the various models of Relaxacizor. Most physicians do not know how these machines work or what effects they may have on the human body, because this information has not been disseminated by the defendants.

28. Under the merchandising practices of the defendants, it is up to the customer to find out for himself whether he has a medical problem that could be aggravated by use of the Relaxacizor.

29. The Relaxacizor is an electronic muscle stimulator but it is not a precision graded instrument such as those used in physical therapy under medical supervision. To qualify Relaxacizor as safe and suitable for use even under medical supervision, defendants would have to (a) provide physicians with a full disclosure brochure describing its purposes, methods and duration of use, and contraindications, side effects, and health hazards, and (b) make no false or misleading claims.

30. The plaintiff's witnesses in this case were more creditable than those of the defendants.

31. Euphemisms such as "discomfort" and "inconvenience" do not accurately describe the shock, pain, suffering, fear, incapacity, and acute aggravation of pre-existing conditions that the Relaxacizor is capable of producing.

32. The labeling of Relaxacizor is misleading because it lulls the purchaser

into believing that it is a safe instrument and the labeling omits material facts regarding adverse effects which may ensue from its use.

33. The labeling of Relaxacizor fails to bear adequate directions for safe use by a layman, and such directions cannot be written because there are so many contraindications for its use in conditions which the user cannot evaluate and may not even be aware that he has.

34. The labeling of the Relaxacizor fails to bear such adequate warnings against use in those pathological conditions where its use may be dangerous to health, and against unsafe methods and duration of administration and application, in such manner and form, as are necessary for the protection of users, because there are so many ways and so many different types of conditions in which its use is contraindicated.

35. The Relaxacizor is dangerous to health when used with the frequency and duration prescribed, recommended, and suggested in its labeling.

36. Over 400,000 units of the Relaxacizor are in the hands of the public. Used Relaxacizors are frequently offered for sale in the classified pages of newspapers.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 21 U.S.C. § 332 (a).

2. The Relaxacizor is a device within the meaning of 21 U.S.C. § 321 (h) because it is intended to affect the structure and functions of the body as a girth reducer and exerciser.

3. The Relaxacizor is misbranded within the meaning of 21 U.S.C. § 352 (a) and § 321(n) in that its labeling is misleading because it represents that the device is safe for use by a layman but fails to reveal facts material in the light of such representation, namely, that the device is capable of aggravating many pre-existing conditions and otherwise injuring the user.

4. The Relaxacizor is misbranded within the meaning of 21 U.S.C. § 352 (f) (1) in that it does not and cannot bear adequate directions for safe use by a layman.

5. The Relaxacizor is misbranded within the meaning of 21 U.S.C. § 352 (f) (2) in that its labeling fails to bear such warnings against use in those pathological conditions were its use may be dangerous to health, and against unsafe methods and duration of administration and application, in such manner and form, as are necessary for the protection of users.

6. The Relaxacizor is misbranded within the meaning of 21 U.S.C. § 352(j) in that it is dangerous to health when used with the frequency and duration prescribed, recommended, and suggested in its labeling.

7. Plaintiff is entitled to a permanent injunction under 21 U.S.C. § 332(a) to enjoin the defendants from violating 21 U.S.C. § 331(a) and (k) by continued commerce in the misbranded Relaxacizor.

8. Plaintiff is entitled to costs that are properly taxable, pursuant to Civil Rule 54(d) of the Federal Rules of Civil Procedure.

9. This Court, sitting as a court of equity, has broad, flexible, inherent, discretionary power to mold its decree to the necessities of this case and to grant full relief by preventing or minimizing further harm to the public.

## PERMANENT INJUNCTION

In accordance with the Findings of Fact and Conclusions of Law heretofore made by this Court after trial, it is

Ordered, adjudged, and decreed as follows:

### I.

This Court has jurisdiction over the subject matter herein and parties hereto, and the Amended Complaint states a valid cause of action against the defendants under the Federal Food, Drug, and Cosmetic Act.

## II.

The Relaxacizor device referred to in this Injunction is an electrical muscle stimulator which provides electrical currents that cause intermittent contractions of the muscles beneath the skin area to which the pads are applied.

## III.

The above-named defendants and their officers, agents, servants, employees, and all others in active concert or participation with any of them are permanently enjoined under 21 U.S.C. § 332(a) from violating 21 U.S.C. § 331(a) and (k) by directly or indirectly doing any of the following acts with respect to the Relaxacizor device or any other electrical muscle stimulator device, since such acts would result in the device being misbranded within the meaning of 21 U.S.C. § 352(a), (f) (1), (f) (2), or (j), or in failing to comply with 21 CFR 1.106(d):

A. Introducing or delivering for introduction into interstate commerce any such device—

1. If its labeling suggests that the device is safe and suitable for use by a layman without medical supervision; or

2. If representations made outside of the labeling suggest that the device is safe and suitable for use by a layman without medical supervision; or

[Findings 3 and 4 deleted]

5. Unless the device is to be sold only to or on the prescription or other order of a licensed physician (or other practitioner licensed by the law of the state in which he practices to use or order the use of the device) for use in his professional practice in the course of a bona fide physician-patient relationship; or

6. Unless the label affixed to the device bears the statement: "Caution: Federal law restricts this device to sale by or on the order of a physician or other practitioner licensed by the law of the State in which he practices to use or order the use of the device"; or

7. Unless the labeling of the device bears information for its use including indications, effects, and methods, frequency, and duration of administration, and specifies all relevant hazards, contraindications, side effects, and precautions under which the physician can use the device safely and for the purpose for which it is intended; or

8. Unless the labeling of the device informs the physician of the electrical characteristics and properties of the device so that he can use it safely and for the purpose for which it is intended; or

9. Unless the labeling of the device informs the physician that the device is hazardous and contraindicated for use on the chest area, in the presence of malignancies, during pregnancy, and in the presence of conditions involving intra-abdominal, gastrointestinal, orthopedic, muscular, neurological, vascular, dermatological, kidney, gynecological and pelvic disorders.

B. Holding for sale, offering for sale, distributing, or selling, in violation of any of the conditions specified under paragraph A above, any such device after shipment of the device or any of its components in interstate commerce.

## IV.

The defendants shall, within ten days, notify all persons engaged in the distribution of the Relaxacizor device as to the judgment of this Court by sending each of them a copy of the Court's Findings of Fact and Conclusions of Law, and a copy of this Permanent Injunction.

## V.

The Court retains jurisdiction of this case for the purpose of enforcing or modifying this injunction, and for the purpose of granting such additional relief at the instance of any of the parties as may hereafter appear necessary or appropriate.

## VI.

The plaintiff, United States of America, shall recover from the defendants the costs of this action, to be taxed by the Clerk of the Court.