**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**ARTICLES OF DEVICE consisting of the following: * * * "KuF DIATHERA-PUNCTEUR, ETC. * * * DETECTEUR NIBOYET GMG SCHMIDT D'ACUPUNCTURE," etc., et al., Defendant-Appellant,**

and

**F. K. Bellokossy, M. D., Claimant-Appellant.**

**No. 72–1210.**

United States Court of Appeals,
Tenth Circuit.

Submitted Feb. 23, 1973.

Decided May 30, 1973.

James L. Treece, U. S. Atty., Gregory B. Hovendon, Chief, Consumer Affairs Section, Howard S. Epstein, Atty. Antitrust Div., Dept. of Justice (Peter Barton Hutt, Asst. Gen. Counsel, Food, Drugs, and Product Safety Div., Joanne S. Sisk, Robert E. Wilmoth, and Jay H. Geller, Attys., Dept. of Health, Education, and Welfare, Washington, D.C., of counsel), on the brief for plaintiff-appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

SETH, Circuit Judge.

This is an action for forfeiture of two machines seized in a doctor's office under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. It is alleged in the complaint that the machines were misbranded in that the labels did not contain adequate directions for diagnosis and treatment of human diseases.

There are two machines against which the proceedings were brought and which were ordered condemned and destroyed by the trial court. One was described as a "KuF Diatherapuncteur" (KuF machine), and the other as a "Detecteur Niboyet GMG Schmidt D'Acupuncture" (the Schmidt machine). Dr. F. K. Bellokossy, from whom the devices were seized, intervened as the claimant. The case was tried on the misbranding issue.

The trial court found that the two machines were "devices" within the meaning of 21 U.S.C. § 321(h) in that they were "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man . . . ," and that they were misbranded within the meaning of section 352(f)(1), in that their labeling did not bear adequate directions for use nor did it warn against unsafe dosages or methods of duration and application.

The trial court also found that the devices were not exempt under the exceptions provided in 21 C.F.R. §§ 1.-106(d)(3) and (d)(4) from the labeling requirements of section 352(f)(1), by

Herbert W. DeLaney, Jr., Denver, Colo., on the brief for defendant-appellant and claimant-appellant.

referring to the testimony of plaintiff's experts that the "directions, hazards, warnings and other information" were not "commonly known to practitioners licensed by law to use the device."

Based on the testimony of claimant-appellant, the trial court found that nothing except an electrical wiring diagram was furnished with the devices, and that even if the books and other information introduced into evidence by the claimant-appellant had been furnished with the devices, the devices would still be misbranded because the books were in German, and not in English, as required by 21 C.F.R. § 1.103(c). Additionally, the court found that the devices were inadequately labeled from the testimony of claimant-appellant that he himself could not have used the machines had he not taken a thirty-day course of instruction and read over thirty-five different books which he had purchased from time to time from different sources, in order to be able to use the devices.

A careful review of the record convinces us that the findings of the trial court were supported by substantial evidence and were not clearly erroneous.

Appellant argues on this appeal that the statements of the trial court appearing at various parts of the record show that he was biased and prejudiced against the appellant, and that under those circumstances, the trial was not the fair and impartial one he is entitled to.

■■ Within reasonable bounds, the trial court has the right to participate in questioning witnesses and may otherwise attempt to bring out the truth, especially in cases tried without a jury. See Bank of Utah v. Commercial Security Bank, 369 F.2d 19 (10th Cir.); Moore v. Strong, 360 F.2d 71 (10th Cir.). From the record before us it appears that at times the trial court was irritated with appellant, but the judge's comments and questions, taken either individually or collectively, did not exceed the bounds of judicial discretion. Nor do we discover any prejudice against the

appellant after careful study of the court's findings. Although we can say that some of the findings dealing with the nature and usefulness of the practice of acupuncture may have been influenced by his feelings and thoughts about that medical practice, such findings are immaterial to the action and have no bearing on the court's conclusion that the devices were in fact inadequately and improperly labeled.

■ Appellant's next claim is that the trial court exceeded the bounds of judicial notice by commenting upon, and to some extent relying upon, his previous experience in the field of electrical engineering and expressing his opinion, after looking at the wiring diagram which was delivered with one of the devices, that the device would probably short out if plugged into an electrical circuit. Although we concede that if the questions of how the machine was wired, and if it would in fact work, were in any way pertinent to the adequacy of the labeling (which they are not), we would feel it necessary to consider further this argument. However, the entire line of inquiry into the electrical workings of the devices had no bearing on any of the issues in this case, and any extrajudicial notice that might have been taken by the trial court could not have been more than harmless error, not prejudicial to the appellant.

Appellant next urges that we reverse the trial court because the expert witnesses called by the Government all admitted that they knew nothing about either the science of acupuncture or the construction or operation of the devices. It is also contended that the testimony relative to the "experiments" performed by these expert witnesses with the devices should not have been allowed into evidence nor considered by the court.

The Government called as their experts Charley Smyth, M.D., a professor at the University of Colorado Medical School in charge of the Arthritis Division of that institution; Gordon Christensen, D.D.S., professor and chairman of the Department of Rehabilitative

Dentistry at the same medical center; and George Hill, M.D., Assistant Professor of Surgery and Surgeon-in-Chief of the Cancer Chemotherapy Clinic, also at the University of Colorado Medical Center. These gentlemen examined the devices in question and, with the exception of Dr. Smyth, plugged them into an electrical outlet and "experimented" with them. Dr. Smyth did not have an opportunity to do so. Each of the experts testified that the "directions, warnings, and other information" were not "commonly known to practitioners licensed by law to use the device" nor were they, with the instructions made available to them by the Government, able to understand how the devices operated or what hazards or contraindications were associated with the operation of the devices. The material made available to the witnesses was a pamphlet, translated from the German by Government translators. The German version appeared to be the only material that came with the machines other than the wiring diagram discussed earlier and taken by the Food and Drug Administration agents when the devices were seized.

■ The pamphlet mentioned above and the testimony of claimant-appellant indicated that the devices could be used to locate focal infection in teeth, for organ testing and treatment, to select proper drugs for a particular patient, and to treat pain associated with cancer, arthritis, etc., among other functions. We believe that it was entirely proper to accept the testimony of the Government's experts and the results of their "experiments" to show that the devices did not come within the exceptions contained in 21 C.F.R. §§ 1.106(d)(3) and (d)(4).

Appellant's last three points deal with (a) whether the machines are devices within the meaning of 21 U.S.C. § 321(h); (b) whether the machines come within the exceptions contained in 21 C.F.R. §§ 1.106(d)(3) and (d)(4); (c) whether the literature accompanying the machines constituted adequate labeling within the meaning of 21 U.S.C. § 352(f)(1).

■ As to point (a), appellant argues that since the trial court made a finding that the machines were probably no more than mere galvanometers, therefore the machines cannot meet the definition of "device." This argument has been disposed of by the Ninth Circuit in Church of Scientology of California v. Richardson, 437 F.2d 214 (9th Cir.). See also United States v. Ellis Research Laboratories, Inc., 300 F.2d 550 (7th Cir.), where a machine similar in use and function to the ones involved in this case was found to be a "device."

■ Appellant argues under point (b) as to exceptions that since the seller of the machines required that a person take his thirty-day course in their use and operation, the machines are exempt according to the provisions of 21 C.F.R. §§ 1.106(d)(3) and (d)(4), since all the hazards, etc. of using the machines would be "commonly known to practitioners licensed by law to use the device." The answer to this argument is that it appears that although the sale of the machines might be restricted to those taking the course, any medical doctor would be "licensed by law to use the device." 21 C.F.R. §§ 1.106(d)(3) and (d)(4) provide in substance that these machines must have been labeled or have directions, warnings, and other information unless the device is one commonly known to practitioners licensed by law to use the device. There was testimony by three members of the medical profession who testified that they had never heard of the machines, nor had they ever seen them used at any place or any time in their experience. This is sufficient.

■ Point (c) of appellant relates to the accompanying literature as "labeling." The trial court found there was no such labeling and no such documents. In any event, what material there was had to be translated from German to English, and had this been present and

adequate the devices were nevertheless misbranded since 21 C.F.R. § 1.103(c) provides, with an exception not here relevant that the labeling must be in English.

Having found no merit in any of appellant's contentions, the judgment of the district court is affirmed.