UNITED STATES of America, Plaintiff,

v.

**22 RECTANGULAR OR CYLINDRICAL FINISHED DEVICES, MORE OR LESS, * * * "THE STER–O–LIZER MD–200 * * *," ... HALOGENIC PRODUCTS COMPANY, a/k/a Ster–O–Lizer Manufacturing Company, a corporation and Tim Themy–Kotronakis, an individual. Defendants.**

Civ. No. 86–C–0486G.

United States District Court,
D. Utah, C.D.

Jan. 12, 1989.

1160

Mark A. Heller and Glen R. Dawson, Washington, D.C., for plaintiff.

William D. Appler, Washington, D.C., and Michael L. Deamer, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on September 2, 1988, pursuant to the parties' respective cross Motions for Summary Judgment. The United States was represented by Mark A. Heller and Glen R. Dawson, and defendants were represented by William D. Appler and Michael L. Deamer. Counsel submitted memoranda and presented oral argument, after which the

court took the matter under advisement. Being now fully advised, the court sets forth its Memorandum Decision and Order.

## BACKGROUND

The government brought this action under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–392 (1972 & Supp. 1988) (the "Act"), for seizure and condemnation [1] and to enjoin alleged violations of the Act [2] by defendant Halogenic Products Corporation ("Halogenic"), a/k/a Ster-O-Lizer Manufacturing Corporation, and its president and sole owner, defendant Tim Themy–Kotronakis ("Themy"). At issue is the scope of the statutory definition of "device" as set forth in 21 U.S.C. § 321(h) (Supp.1988), and the extent of the Food and Drug Administration's ("FDA") regulatory authority under that definition. The specific item involved in this definitional controversy of first impression is a product manufactured and distributed by Halogenic, known as the MD–200 sterilizer ("sterilizer"), which purportedly has the capacity to sterilize disposable and nondisposable surgical instruments by submerging the instruments in a sodium water solution into which electrical energy is introduced. According to Themy, this electrolysis process separates the active chlorine radicals from the solution, and these radicals, together with an ozone by-product, function to kill spores and bacteria on surgical instruments.

The FDA conducted "good manufacturing practice" inspections at the Ster-O-Lizer facility in Salt Lake City, Utah, on five separate occasions between 1983 and 1987. At the conclusion of each inspection, the FDA provided written notification to Themy detailing the alleged good manufacturing practice violations that existed at the time of each inspection. On January 11, 1984, due to defendants' alleged failure to bring their conduct into compliance with the Act and the FDA regulations for good manufacturing practices for medical devices, 21 C.F.R. §§ 820.1–.198 (1988), the FDA issued a regulatory letter informing Themy that if corrective measures were not taken, the FDA was prepared to pursue regulatory action, including the pursuit of injunctive relief. On June 5, 1986, after it became apparent that Themy had no intention of complying with the FDA's requests, the MD–200 sterilizers were seized and attached by the United States Marshal pursuant to a warrant of arrest issued by the clerk of this court.

The government filed an amended complaint in this action alleging, among other things: (1) that the surgical instrument sterilizers are "adulterated" within the meaning of 21 U.S.C. § 351(h) (1972 & Supp.1988) [3] in that they are not produced under current good manufacturing practices which are required to assure safe and effective devises under 21 U.S.C. § 360j(f)(1) (Supp.1988); [4] and (2) that the sterilizers are "misbranded" under 21 U.S.C. § 352(o) (1972 & Supp.1988) [5] in that

1. The seizure portion of this case finds subject matter jurisdiction under 21 U.S.C. § 334 (1972 & Supp.1988), which provides for this court's jurisdiction over "any adulterated or misbranded device." *Id.* § 334(a)(2)(D).

2. The injunctive portion of this case finds subject matter jurisdiction under 21 U.S.C. § 332(a) (1972) for alleged violations of 21 U.S.C. § 331(a) (1972 & Supp.1988), prohibiting the introduction into interstate commerce of an adulterated or misbranded device, and 21 U.S.C. § 331(k) (1972 & Supp.1988), prohibiting the misbranding or adulteration of a device after interstate shipment.

3. A product is "adulterated" under 21 U.S.C. § 351(h),
    [i]f it is a device and the methods used in, or the facilities or controls used for, its manufac-

ture, packing, storage, or installation are not in conformity with applicable requirements under section 360j(f)(1) or an applicable condition prescribed by an order under section 360j(f)(2) of this title.

4. The applicable requirements for good manufacturing practices under 21 U.S.C. § 360j(f)(1), are found in the FDA's regulations, 21 C.F.R. § 820.1–.198 (1988).

5. A device is "misbranded" under 21 U.S.C. § 352(o),
    [i]f it was manufactured, prepared, propagated, compounded, or processed in an establishment in any State not duly registered under section 360 of this title, if it was not included in a list required by section 360(j) of this title, if a notice or other information respecting it was not provided as required by such section

they have not been subject to premarket notification to the FDA under 21 U.S.C. § 360(k) (1972 & Supp.1988).[6] After the defendants answered the amended complaint and some discovery was conducted, the parties entered into a stipulation, dated December 16, 1987. Pursuant to that stipulation, the defendants "admit the allegations of the Amended Complaint, thereby withdrawing any denials in the Answer ... except that the claimant/defendants continue to deny the Amended Complaint's allegation that the Ster–O–Lizer MD–200 is a medical device within the meaning of 21 U.S.C. § 321(h)." Stipulation, 86–C–486G. By way of the same stipulation, the parties also agree that "resolution of the issue of whether the Ster–O–Lizer MD–200 is a medical device within the meaning of 21 U.S.C. § 321(h) will determine the allocation of judgment in this case, and ... that if the [government] or the claimant/defendants prevail on this issue, judgment and remedy should be entered in favor of the prevailing party." *Id.* Accordingly, if the sterilizer is a "device" within the definition of the Act, then the defendants have admitted that the device is adulterated and misbranded and that they have violated the law, as alleged in the complaint. If, on the other hand, the sterilizer is not a "device," the Act itself is totally inapplicable, and the government is not entitled to any of its requested relief.

## ANALYSIS

### I. THE DEVICE ISSUE

The Medical Device Amendments to the Food, Drug and Cosmetic Act were enacted by Congress in 1976 to provide for the safety and effectiveness of medical devices intended for human use and other purposes. Medical Device Amendments of 1976, Pub.L. No. 94–295, 90 Stat. 539 (codified at 21 U.S.C. §§ 360c–360k (Supp. 1988)). The amendments authorize the FDA to exercise specific regulatory powers pursuant to complex administrative procedures. However, before a product may be subject to the FDA's regulatory powers, it must be deemed to be a "device," which the Act defines as

> an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagant, or other similar or related article, including any component part, or accessory, which is—
>
> (1) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them,
>
> (2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or
>
> (3) intended to affect the structure or any function of the body of man or other animals, and
>
> which does not achieve any of its principal intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

21 U.S.C. § 321(h) (Supp.1988).[7] Under the statute, the definition of a device has three

---

or section 360(k) of this title, or if it does not bear such symbols from the uniform system for identification of devices prescribed under section 360(e) of this title as the Secretary by regulation requires.

**6.** 21 U.S.C. § 360(k) requires that persons who must register submit to the FDA, 90 days before marketing, a report that, among other things, identifies the class into which the device is classified under 21 U.S.C. § 360c. Classification occurs only after an article is deemed to be a "device" and is based on the different levels of risks, knowledge and benefits attributed to the device. *See infra* note 10 for a discussion of the three classes of devices.

**7.** Although the question of whether the sterilizer is a "device" within the meaning of section 321(h) is matter of first impression, the court is not operating on an entirely clean slate as to other products. In this regard, courts have held that particular products fit within the definitional predicate of a "device." *See e.g., United States v. An Article of Device, Toftness Radiation Detector,* 731 F.2d 1253, 1257–58 (7th Cir.), *cert. denied,* 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 186 (1984) (chiropractic instrument used to detect electromagnetic radiation from the human body to find conditions needing treatment); *United States v. Articles of Device, Kuf Diatherapuncteur,* 481 F.2d 434, 437 (10th Cir.1973) (machine used in acupuncture treatments); *United States v. Ellis Research Laboratories, Inc.,* 300 F.2d

parts, and a product may be a device if it fits within any portion of the provisions of 21 U.S.C. § 321(h)(1)–(3).[8]

*Lack of Administrative Classification*

■ Defendants' first argument is that it is inappropriate for the FDA to attempt to classify a product as a medical device in a litigated enforcement proceeding where it has failed to classify the device administratively. The court does not agree. Defendants' classification argument is irrelevant to the "device" issue presented here.[9] Section 321(h) defines the scope of all products that are devices under the Act. Signifi-

cantly, that statute does not discriminate between devices that are classified and devices that are not classified. Indeed, classification occurs only after a product is deemed to be a device; classification is not meant to determine whether a product is a device, but rather to determine the degree of regulation necessary to assure a product's safety and effectiveness once it is characterized as a device.[10] Not only does the language of the statute itself fail to support defendants' classification claim, but persuasive case law also does not support that position.[11] Accordingly, the court

550, 552–553 (7th Cir.), *cert. denied,* 370 U.S. 918, 82 S.Ct. 1558, 8 L.Ed.2d 499 (1962) (highly sensitive galvanometer); *United States v. 23 Articles,* 192 F.2d 308, 309 (2d Cir.1951) (phonographic records used in treating insomnia); *United States v. 4 Devices Labeled in Part "Colortherm",* 176 F.2d 652, 654 (10th Cir.1949) (cabinet producing lights similar to neon lights used in treating various medical disorders); *United States v. An Article of Device Consisting of 1,217 Cardboard Boxes,* 607 F.Supp. 990, 997 (W.D.Mich.1985) (prosthetic shoulder ligament device); *United States v. Torigian Laboratories, Inc.,* 577 F.Supp. 1514, 1521 (E.D.N.Y.), *aff'd* 751 F.2d 373 (2d Cir.1984) (intraocular instrument implanted in the human eye to replace the eye's natural lens); *United States v. Articles of Device, Acuflex, Pro-med,* 426 F.Supp. 366, 369 (W.D.Pa. 1977) (electric acupuncture instrument); *United States v. Relaxacizor,* 340 F.Supp. 943, 947 (C.D. Cal.1970) (girth reducer and exercise machine); *United States v. Article Consisting of 46 Devices,* 315 F.Supp. 588, 589–91 (D.Minn.1970) (facial exerciser).

**8.** Because the government does not contend that defendant's sterilizer is listed in either publication referred to in subsection (1) the analysis will focus on whether the sterilizer falls within the remainder of the statute.

**9.** In support of their classification argument, defendants rely on *United States v. Bioclinical Systems, Inc.,* 666 F.Supp. 82 (D.Md.1987), wherein the court held that the FDA could not require manufacturers of plated culture media to meet a certain sterility assurance level before administratively establishing a good manufacturing practice ("GMP") to that effect. *Id.* at 84. However, the *Bioclinical* case is inapposite to the case at bar. In *Bioclinical,* the defendants did not admit to the alleged violative conduct, in contrast to these defendants who admit to the alleged violations, if the court finds that the sterilizer is a device. In fact, whether the product was a "device" was not an issue in *Bioclinical,* and the key GMP statutory issue in *Bioclinical* is not present here.

**10.** Devices are categorized into three separate classes. The first category, "Class I, General Controls," includes all devices that do not present any potentially unreasonable risk of illness or injury. 21 U.S.C. § 360c(a)(1)(A) (Supp. 1988). No specific performance standards or premarket approval is necessary to assure their safety and effectiveness. *Id.* The second classification, "Class II, Performance Standards," is intended for those devices presenting a higher degree of risk. 21 U.S.C. § 360c(a)(1)(B) (Supp. 1988). Sufficient information is available about these devices to guarantee safety and efficiency through performance standards. *Id.* The most dangerous or potentially hazardous devices are classified as "Class III, Premarket Approval," because they present an unreasonable risk of harm and require premarket review and approval. 21 U.S.C. § 360c(a)(1)(C) (Supp.1988). The information available is insufficient to establish a performance standard that would provide reasonable assurance of safety and effectiveness. *Id.*

**11.** *See e.g., United States v. An Article of Device, Toftness Radiation Detector,* 731 F.2d 1253, 1256–58 (7th Cir.), *cert. denied* 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 186 (1984) (litigated enforcement proceeding in which the court specifically considered whether a certain chiropractic instrument was a device even though there was no prior administrative proceeding to "classify" the instrument as a device); *United States v. An Article of Device Consisting of 1,217 Cardboard Boxes,* 607 F.Supp. 990 (W.D.Mich.1985) (in considering the same allegations of misbranding and adulterating present in this case, the court held for the government on summary judgment without a prior administrative proceeding to determine the device status of the product at issue). *Cf. United States v. Alcon Laboratories,* 636 F.2d 876, 889 (1st Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1981) (holding that the FDA need not administratively determine that a product is a "new drug" within the meaning of 21 U.S.C. § 321(p) before bringing an enforcement proceeding).

concludes that it is not necessary that it be determined in an administrative proceeding that a product is a device before the FDA can bring a litigated enforcement action to stop device misbranding and adulteration.

### Lack of Direct Contact with Patient

■ Defendants next argue that the surgical instrument sterilizer is not a device within the meaning of Section 321(h) because it does not directly come in contact with patients. Defendants' interpretation of the term "device" would exclude from the definition any product used in the diagnosis, treatment or prevention of disease so long as the product does not directly contact the human body. This court declines to interpret section 321(h) in such a narrow and restrictive manner. A product " 'need not be the only agent in an allegedly curative process to be a device within the definition.' " *United States v. An Article of Device, Toftness Radiation Detector,* 731 F.2d 1253, 1258 (7th Cir.), *cert. denied,* 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 186 (1984) (quoting *United States v. Article of device, Hubbard Electrometer,* 333 F.Supp. 357, 360 (D.D.C.1971)). Indeed, even device "accessories" and "components" intended for use in devices standing alone, constitute devices. *See* 21 U.S.C. § 321(h) (Supp.1988).[12]

The direct contact argument was expressly addressed and rejected by the Supreme Court in *United States v. An Article of Drug, Bacto-Unidisk,* 394 U.S. 784, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969). In that case, the Court held that the term "drug," defined in 21 U.S.C. § 321(g) (1972) as including "articles intended for use in

the diagnosis, care, mitigation, treatment, or prevention of disease in man," [13] was broad enough to include an antibiotic sensitivity disc used as a screening test in determining the proper antibiotic drug to administer to patients, so as to subject the disc to the FDA's premarket clearance regulations. *Id.* at 798, 89 S.Ct. at 1418. The Court rejected the defendant's contention that the disc was not covered by the Act because of its indirect relationship to the treatment of patients, stating:

> Respondent's primary contention here is that the sensitivity discs are not subject to any of the provisions of the Act because Congress did not intend it to cover articles used so *indirectly* in the "cure, mitigation, [and] treatment" of disease ... In view of the legislative history discussed below and the broad remedial purpose of the Act itself, however, we hesitate to give the critical language such a narrow, restrictive reading in the absence of congressional direction to do so, and we therefore reject the contention that the discs do not properly fall within the purview of the Act.

*Id.* at 792, 89 S.Ct. at 1415 (emphasis in original). Defendants attempt to distinguish the *Bacto-Unidisk* case, asserting that the Court's holding only applies to the diagnosis portion of the definition because the disc was used for the diagnosis of disease. However, it is clear that the Court understood the disc as being part of the antibiotic treatment of patients. In that regard, the Court stated: "Although respondent again urges that the disc itself does not 'treat' a patient in the same way an antibiotic does in terms of personal ap-

---

**12.** The FDA's regulations also have characterized many products as devices that have no contact with the body. For example, an AC–powered medical examination light, 21 C.F.R. § 880.6320 (1988); a battery-powered medical examination light, *id.* § 880.6350; and a device known as a "patient care reverse isolation chamber," which is described as a "roomlike enclosure designed to prevent the entry of harmful airborne material," *id.* § 880.5450. Moreover, in *United States v. An Article of Drug, Bacto-Unidisk,* 394 U.S. 784, 800, 89 S.Ct. 1410, 1419, 22 L.Ed.2d 726 (1969), the Supreme Court noted that Congress intended products "such as electric belts, quack diagnostic scales, and thera-

peutic lamps, as well as bathroom weight scales, shoulder braces, air conditioning units, and crutches" to be devices. The inclusiveness of such items as devices reflects Congress' clear intent to characterize "basic aids used in the routine operation of a hospital ..." as devices. *See id.*

**13.** The only apparent distinction between a "drug" and a "device" under the Act is that articles dependent upon chemical action or being metabolized fall within the definition of a "drug" rather than a "device." *See* 21 U.S.C. § 321(h).

plication, the disc plays at least some role in the selection of the appropriate drug." *Id.* at 793, 89 S.Ct. at 1415. This court considers that defendants' sterilizer, like the disc in *Bacto–Unidisk,* plays a significant role in treating and preventing disease in man.

### Intended Use

Turning to subsections (2) and (3) of 21 U.S.C. § 321(h), it is apparent that the true definitional test in determining the existence of a device is intended use. The test is not whether the product has been administratively classified or comes into direct contact with the body. Rather, whether a product is a device turns solely on the product's intended use. *See Toftness Radiation Detector,* 731 F.2d at 1256. FDA regulations define "intended use" as follows:

> The words "intended uses" or words of similar import in §§ 801.5, 801.119, and 801.122 refer to the *objective intent* of the persons legally responsible for the labeling of devices. The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. It may be shown by the circumstances that the article is, with the knowledge of such persons or their representatives, offered and used for a purpose for which it is neither labeled nor advertised ...

21 C.F.R. § 801.4 (1988) (emphasis added). The objective intent referred to in the regulation may be shown not only by a product's labeling claims, advertising or written statements relating to the circumstances of a product's distribution, *see id.,* but also by a product's actual use. *See* H.R.Rep. No. 853, 94th Cong., 14 (1976).

In the case at bar, defendants' labeling and advertising of the sterilizer demonstrates that it is intended for use by health care providers to treat, prevent, mitigate,

or cure disease in man. Specifically, the labeling shows that the sterilizer is to be used in connection with devices such as catheters, endoscopes, syringes, and disposable and nondisposable surgical instruments. Pictorially, the sterilizer's labeling shows an artificial hip, a scalpel, surgical scissors, dentures, a surgical saw, and other devices. The labeling also represents that the Sterilizer will effectively sterilize each of these items. Moreover, in a promotional letter to dentists dated February 15, 1988, defendant Themy asserts that the sterilizer can prevent the transmission of AIDS by destroying the AIDS virus. This claim indicates that the sterilizer is intended for use in the prevention of disease and, therefore, that the sterilizer is a medical device.

There also can be no dispute that the sterilizer, in its actual use, plays an integral role in the surgical treatment of patients. In his affidavit as an expert witness for the government, Dr. William Gay testifies that faulty sterilization in the context of the treatment of patients can result in infection leading to death or serious injury. Affidavit of Dr. William Gay, at ¶ 7. Dr. Gay also asserts that infection from contamination of surgical instruments threatens the potential for success of therapeutic or prophylactic surgery, that the need for sterilization of surgical instruments intended for use in the treatment and prevention of disease in man is absolute, and that the machines intended for use to sterilize such instruments are no less medical devices than the instruments themselves. *See id.* at ¶¶ 6–8.

### Sterilizing Instruments as Constituting Devices by Administrative Interpretation

The FDA has long taken the position that sterilizing instruments and sterilizing accessories, such as those of defendants, are devices used in the treatment or prevention of disease. Specifically, the FDA regulations classify sterilization wraps,[14]

---

**14.** A sterilization wrap "is a device intended to be used to enclose another medical device that

is to be sterilized by a health care provider. It is intended to allow sterilization of the enclosed

ethylene oxide gas sterilizers,[15] dry-heat sterilizers,[16] and steam sterilizers [17] as devices. In this case, the FDA has advanced an interpretation of section 321(h) to include defendants' sterilizer as a device. In determining the validity of the FDA's construction of this statute, the court is guided by the principles enunciated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and its progeny, particularly *Young v. Community Nutrition Inst.,* 476 U.S. 974, 106 S.Ct. 2360, 90 L.Ed. 2d 959 (1986) (upholding the FDA's long standing interpretation of 21 U.S.C. § 346). *See also Salt Lake City v. Western Area Power Admin.,* No. C86–1000G, slip op. at 29–31 (D.Utah April 14, 1988). A court reviewing an agency's construction of the statute which it administers is confronted with two questions. " 'First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' " *Young,* 476 U.S. at 980, 106 S.Ct. 2364 (quoting, *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781). If the statute itself yields no answer, then the second question for the court is " 'whether the agency's answer is based on a permissible construction of the statute.' " *Id.* (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782).

In this case, the language of section 321(h) does not unambiguously demonstrate that the sterilizer is or is not a device. Accordingly, the court finds that Congress left a gap in the definition of device for the FDA to fill, and this case falls within that gap. *See Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2781–82. Where Congress has not spoken to the contrary, the FDA's interpretation of the Act it administers deserves deference and should be sustained if it is "sufficiently rational" notwithstanding other reasonable interpretations. *See Young,* 476 U.S. at 981, 106 S.Ct. at 2365. Manifestly, the FDA's inclusion of surgical instrument sterilizers within its device jurisdiction is rational, particularly in light of the purpose of the Act to protect the public from unsafe and ineffective devices, and the reasonable conclusion that instrument sterilizers are of equal importance to the treatment of patients as the surgical instruments themselves. *See Bacto–Unidisk,* 394 U.S. at 798, 89 S.Ct. at 1418. Accordingly, this court concludes that the FDA's interpretation that defendants' sterilizer is a device within the meaning of section 321(h) of its Act is appropriate and should be sustained.

## II. THE CONDEMNATION ISSUE

Since defendants have admitted that if the MD–200 sterilizer constitutes a device (as this court has now ruled), it is misbranded and adulterated, and it must be condemned under 21 U.S.C. § 334(a)(2)(D) (1972 & Supp.1988).[18] Only upon compliance with the statute, including the requirement that defendants post a "good and sufficient" bond conditioned that the condemned devices and device components shall not be sold or disposed of without the permission of the FDA or the court, shall the seized devices be released to the defendants. *See* 21 U.S.C. § 334(d)(1) (1972).

medical device and also to maintain sterility of the enclosed device until used." 21 C.F.R. § 880.6850 (1988).

**15.** An ethylene oxide gas sterilizer "is a nonportable device intended for use by a health care provider that uses ethylene oxide (ETO) to sterilize medical products." 21 C.F.R. § 880.6860 (1988).

**16.** A dry-heat sterilizer "is a device that is intended for use by a health care provider to sterilize medical products by means of dry heat." 21 C.F.R. § 880.6870 (1988).

**17.** A steam sterilizer "is a device that is intended for use by a health care provider to sterilize medical products by means of pressurized steam." 21 C.F.R. § 880.6880 (1988).

**18.** 21 U.S.C. § 334(a)(2)(D), in relevant part, provides:

The following shall be liable to be proceeded against at any time on libel of information and condemned in any district court of the United States ... within the jurisdiction of which they are found ... (D) any adulterated or misbranded device.

## III. THE INJUNCTION ISSUE

■ The government requests the court to enter an injunction pursuant to 21 U.S.C. § 332(a) (1972)[19] to halt the defendants' persistent violations of the law. Provisions such as section 332(a), which restrain persons from violating laws of the United States, are satisfied where the statutory conditions for relief are met; no additional showing must be made for an injunction to issue. *See e.g., Atchison, Topeka and Santa Fe Ry. Co. v. Lennen,* 640 F.2d 255, 260 (10th Cir.1981); *United States v. Diapulse Corp. of Am.,* 457 F.2d 25, 28 (2d Cir.1972); *Federal Trade Comm'n v. Rhodes Pharmacal Co.,* 191 F.2d 744, 747 (7th Cir.1951), *rev'd on other grounds,* 348 U.S. 940, 75 S.Ct. 361, 99 L.Ed. 736 (1955); *Securities and Exchange Comm'n v. Northeastern Financial Corp.,* 268 F.Supp. 412, 414 (D.N.J.1967). Indeed, the Tenth Circuit has stated:

> Where an injunction is authorized by statute it is unnecessary for plaintiff to plead and prove the existence of the usual equitable grounds, irreparable injury and absence on an adequate remedy at law. It is enough if the requirements of the statute are satisfied.

*Lennen,* 640 F.2d at 260 (quoting *Shadid v. Fleming,* 160 F.2d 752, 753 (10th Cir.1947)).

■ Here, it is sufficient to warrant an injunction under section 332(a) if it is established that the defendants violated section 331 and that such violations likely will continue. Moreover, contrary to defendants' contention, claims that the illegal activities have been discontinued do not, standing alone, provide a defense to a statutory injunction. *See e.g., United States v. An Article of Drug, B-Complex Cholinos Capsules,* 362 F.2d 923, 928 (3d Cir.1966); *United States v. Sene X Eleemosynary Corp., Inc.,* 479 F.Supp. 970, 981 (S.D.Fla. 1979). This is particularly true where, as in this case, the cessation of the unlawful acts appears to be a result of FDA pressure or threatened litigation. *See Philadelphia Record Co. v. Manufacturing Photo-Engravers Ass'n,* 155 F.2d 799, 804

(3rd Cir.1946); *Sene X Eleemosynary Corp.,* 479 F.Supp. at 981.

In determining the defendants' likely future conduct, the court need look no further than defendants' past record with the FDA. It cannot be ignored that defendants have failed five FDA GMP inspections. Defendants failed to heed a regulatory letter alerting them of the need to implement good manufacturing practices and to file a premarket notification for their devices. In short, defendants manufactured and distributed surgical instrument sterilizers with no quality control program, in total disregard of the FDA's regulations and have failed to bring the devices into compliance with the law. Moreover, the repeated, persistent violations of the Act by defendant Themy, the sole owner and president of the defendant corporation, do not inspire confidence in the court that his past conduct will change without a court ordered injunction.

Based upon the foregoing analysis, this court concludes that the Ster-O-Lizer MD-200, and each component thereof, constitute a "device" within the meaning of 21 U.S.C. § 321(h), and that such are adulterated within the meaning of 21 U.S.C. § 351(h) in that they are not produced in conformance with current good manufacturing practices under 21 U.S.C. § 360j(f)(1), as set forth in the FDA's regulations. Further, the said device and components are misbranded within the meaning of 21 U.S.C. § 352(*o*) in that they are not the subject of a notice prior to marketing as required by 21 U.S.C. § 360(k). The court further determines that the unlawful acts of defendants are likely to continue in the future. Accordingly, it is hereby

ORDERED, that the seized Ster-O-Lizer MD-200 devices, and component parts, are condemned pursuant to 21 U.S.C. § 334(d). The said devices and components shall be released to the defendant, upon application by the defendants and compliance with conditions required by law, for the sole purpose of bringing the articles into compliance with the Act. If the defendants fail

**19.** 21 U.S.C. § 332(a) provides "the district courts of the United States [with] jurisdiction ... to restrain violations of section 331 of this title ..."

**1168**

to bring the seized products into compliance with law, the United States Marshal shall destroy such articles and make due return to the court.

IT IS FURTHER ORDERED, that an injunction shall issue pursuant to 21 U.S.C. § 332(a).

Counsel for the United States of America shall prepare and lodge with this court a form of Judgment and Injunction consistent with this Order, after first complying with Rule 13(e) of the Rules of this Court.

IT IS SO ORDERED.