Elmer **DAVIS**, Regional Director of the Sixteenth Region of the National Labor Relations Board, for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD**, Petitioner,

v.

**HUTTIG SASH AND DOOR COMPANY,** H S D Corporation, and Lumbermen's Supply Company, Respondents.

Civ. No. 68–92.

United States District Court
W. D. Oklahoma.

June 20, 1968.

Evert P. Rhea, Fort Worth, Tex., for petitioner.

Asa Ambrister, Nashville, Tenn., George v. Gardner, Washington, D. C., John Amick, Oklahoma City, Okl., for respondents.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

The Petitioner seeks a temporary injunction against the Respondents pursuant to Section 10(j) of the National Labor Relations Act, as amended, (Act), 61 Stat. 149; 29 U.S.C. § 160(j), pending final disposition of the matters involved herein which are before the National Labor Relations Board (Board) on several complaints. The Petitioner claims that the Defendants are engaging in unfair labor practices within the meaning of Section 8(a) (1) and (5) of the Act, 29 U.S.C. § 158(a) (1) and (5). These sections prohibit an employer from interfering with, restraining, or coercing its employees in the exercise of their rights under the Act, and from failing or refusing to bargain in good faith with the collective bargaining representative of its employees.

On or about September 28, 1967, the majority of the employees of Lumbermens Supply Company (Lumbermens) designated the Chauffeurs and Helpers Local Union 886 (Union), affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Teamsters), as their representative for the purposes of collective bargaining with Lumbermens. On October 6, 1967, the Petitioner certified the Union as the exclusive collective bargaining representative of said employees. On or about November 1, 1967, the Defendant, H S D Corporation, (H S D) purchased Lumbermens. By an amendment to Articles of Incorporation the name was then changed to Lumbermen's Supply Company (Lumbermen's), an apostrophe being added to the said name. The Defendant, Huttig Sash and Door Company (Huttig) appears to own Lumbermen's and H S D.

At the evidentiary hearing on the Petition for Temporary Injunction, the Defendants admitted refusal to recognize and meet with the Union. In resisting the Petition herein, the Respondents urged, (1) that the Defendant Lumbermen's is not a successor employer of the original Lumbermens, as to whom the Union had been so certified, and that no duty therefore existed as to it to recognize and meet with the Union, (2) that the truck drivers of Lumbermens could not appropriately be included in a bargaining unit with the warehouse and production employees of Lumbermens, and, (3) that the Petitioner has not made the requisite showing of a need for the injunctive relief sought herein.

From the evidence presented, the Court is satisfied that the Respondent Lumbermen's is the successor of the original Lumbermens within the meaning of the Act and as such it had the duty to recognize and meet with the Union pursuant to the said certification of October 6, 1967. The purchase of the original Lumbermens by the Respondent, H S D, included approximately 90% of the inventory, all fixtures, furniture, stationery, check writer, the name (which it changed slightly), most of the machinery except some tools and all customers and records of the original Lumbermens. The same trucks are used and leased from the same rental agency, the same building is leased and occupied, the same equipment is used except a frame mounted door machine has been placed in production, all outstanding accounts receivable of Lumbermens, though not transferred, are being collected in part by the successor, the same customers are served except a few towns have been assigned to a Tulsa Company owned by Huttig, and all supervisors perform the same duties and the other employees except one have been employed by the successor in the same work and without any loss in remuneration. The following authorities indicate that under this evidence there is successorship in this case; that the aforementioned certification followed the industry of the original Lumbermens to the Respondent, Lumbermen's, and that the said certification therefore applies to the Respondent, Lumbermen's. N. L. R. B. v. McFarland, 306 F.2d 219 (Tenth Cir. 1962); Overnite Transportation Company v. N. L. R. B., 372 F.2d 765 (Fourth Cir. 1967), cert. denied 389 U.S. 838, 88 S.Ct. 59,

19 L.Ed.2d 101; N. L. R. B. v. Downtown Bakery Corp., 330 F.2d 921 (Sixth Cir. 1964); N. L. R. B. v. Auto Ventshade, Inc., 276 F.2d 303 (Fifth Cir. 1960); N. L. R. B. v. Parran, 237 F.2d 373 (Fourth Cir. 1956); N. L. R. B. v. Lunder Shoe Corp., 211 F.2d 284 (First Cir. 1954); N. L. R. B. v. Armato, 199 F.2d 800 (Seventh Cir. 1952); N. L. R. B. v. Blair Quarries, Inc., 152 F.2d 25 (Fourth Cir. 1945). The cases cited by Respondents, N. L. R. B. v. John Stepp's Friendly Ford, Inc., 338 F.2d 833, 835–836 (Ninth Cir. 1964); and N. L. R. B. v. Alamo White Truck Service, 273 F.2d 238 (Fifth Cir. 1959), are clearly distinguishable.

■ As to the appropriateness of the bargaining unit, there is no evidence before the Court from which the Court may consider the inclusion or exclusion of the drivers. The Petitioner considered the bargaining unit as appropriate as demonstrated by the said certification of October 6, 1967. It seems that regarding this point, a determination should be made on a case by case basis, E. H. Koester Bakery Co., Inc., 136 NLRB 1006, and that drivers may clearly be included in a bargaining unit when appropriate. Since the Respondent did not produce evidence in support of this contention, the Court will indulge in the presumed regularity and legality of the action of the Petitioner in the said certification of October 6, 1967, and case law in which drivers in an operation like Lumbermen's, have been included, Marks Oxygen Company of Alabama, 147 NLRB 228, and conclude that this objection to the temporary injunction is not supported by any evidence and should not be considered in this proceeding.

■ Section 10(j) of the Act, 29 U.S.C. 160(j), provides:

"(j) The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

The required complaint has been issued. The Defendants admit the refusal to recognize and meet with the Union. This is an unfair labor practice in violation of Section 8(a) (5) of the Act [1] since by virtue of the said certification of October 6, 1967, and the successorship which followed in the sale twenty-five days thereafter and previously discussed herein, the Defendants should have recognized and met with the Union. In addition, the evidence shows that a unilateral wage increase was granted by Respondents without notice or bargaining with the Union in December, 1967. This is an unfair labor practice in violation of Sections 8(a) (1) and (5) of the Act.[2] Crown Tar and Chemical Workers, Inc. v. N. L. R. B., 10 Cir., 365 F.2d 588, and cases cited therein.

■ It is therefore necessary for the Court to determine from the evidence presented if the temporary injunction sought is a "just and proper" remedy under section 10(j) of the Act. Brown v. National Union of Marine Cooks and Stewards, 104 F.Supp. 685 (Cal.1951). The Tenth Circuit has recently considered this problem in Angle v. Sacks, 382 F.2d 655 (Tenth Cir. 1967). The issuance of a temporary injunction against an em-

---

1. Which provides: "It shall be an unfair labor practice for an employer * * * (5) to refuse to bargain collectively with representatives of his employees * * *"

2. Section 8(a) (1) provides: "It shall be an unfair labor practice for an employer— (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7 * * *"

ployer was affirmed in this case upon a finding that before the election the employer interviewed employees and told them the Union was a threat to the plant, that he would discharge any employee who was not 100 percent for the employer and that he would never bargain with the Union. As to the criteria to be observed in determining if temporary relief should be granted by the Court under Section 10(j) the Court said at page 660:

"The circumstances of the case must demonstrate that there exists a probability that the purposes of the Act will be frustrated unless temporary relief is granted. Administration of the Act is vested by Congress in the Board, and when the circumstances of the case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless, temporary relief may be granted under section 10(j)."

In the following cases orders were issued requiring recognition and bargaining with the Union: Lebus for and on Behalf of N. L. R. B. v. Manning, Maxwell & Moore, Inc., 218 F.Supp. 702 (D.C. La.1963); Brooks v. Square Tube Corp., 50 LC 19,155 (Mich.1964); Alpert v. Trailways of New England, Inc., 51 LC 19,529 (Mass.1965); Rains for and on Behalf of N. L. R. B. v. East Tennessee Packing Company, 240 F.Supp. 770 (Tenn.1965); and Madden v. Alberto-Culver Company, 44 LC 17,335 (Ill. 1961). It appears to be settled that where Congress has set the standard for the issuance of an injunction (as in Section 10(j) if deemed "just and proper") these standards and no others need be satisfied to obtain the injunctive relief. Securities & Exchange Commission v. Torr, 87 F.2d 446 (Second Cir. 1937); American Fruit Growers v. United States, 105 F.2d 722 (Ninth Cir. 1939); and S. E. C. v. Jones, 85 F.2d 17 (Second Cir. 1936). In this connection, the Court in Angle v. Sacks, supra, 382 F.2d at page 659, said:

"We find nothing in the legislative history of section 10(j) declaring or suggesting that the Board's discretion in seeking section 10(j) relief should be limited to those emergencies endangering the national welfare, or to situations with 'heavy and meaningful repercussions' or to situations that have a demonstrably prejudicial impact on the public. The concern of Congress was rather that the purposes of the National Labor Relations Act could be defeated in particular cases by the passage of time * * *"

The case of Brown for and on Behalf of N.L.R.B. v. Pacific Telephone and Telegraph Company, 218 F.2d 542 (Ninth Cir. 1955), stated at page 544:

"In view of the irreparable harm which the designated unions may suffer between drifting away of their members * * * we think the law entitles the Board to the injunctive relief sought."

This Court is satisfied and finds from the evidence presented and the circumstances of this case that there exists the probability that the purposes of the Act will be frustrated unless temporary relief is granted by ordering the Respondents to recognize and meet with the Union pursuant to the certification of October 6, 1967. The Court also finds that there is a reasonable apprehension that the efficacy of the Board's final order may be nullified or the administrative procedures will be rendered meaningless unless temporary relief is granted. In brief, the employees voted for the Union to be their representative; certification followed; the Company was then promptly sold but the industry and general posture of the original company remained essentially intact; the new owners refused to recognize and meet with the Union and a unilateral wage increase was granted. These circumstances and the other features of the case including the possible "drifting away" of employees demonstrate a clear probability that the purposes of the Act

will be frustrated unless temporary relief be granted requiring observance of the said vote and certification.

The requested temporary injunction will therefore issue. Counsel for Petitioner will prepare and submit the same for signature and entry by the Court.