640 F.2d 255
 The ATCHISON, TOPEKA AND SANTA FE RAILWAY CO., Union Pacific
Railroad Co., Chicago Rock Island and Pacific
Railroad Co. et al,
Missouri-Kansas-Texas Railroad
Co., Plaintiffs-Appellants,
v.
Michael LENNEN, Department of Revenue, State of Kansas et
al., Defendants-Appellees.
 No. 80-2299.
 United States Court of Appeals,
Tenth Circuit.
 Argued Jan. 12, 1981.
Decided Jan. 23, 1981.
 
 J. B. Reeves, Laurence E. Garrett, Ronald A. Lane, Daniel J. Westerbeck, Chicago, for plaintiff-appellant The Atchison, T. & S. F. Ry. Co.
 John R. Mendenhall, F. Kent Kalb, James D. Douglass, Chester A. Arterburn, Jr., Sabatini, Waggener, Vincent & Arterburn, Topeka, Kan., for plaintiff-appellant Union Pac. Ry. Co.
 Mark L. Bennett, Jr., Topeka, Kan., for plaintiff-appellant Chicago R. I. & P. Ry. Co., and William M. Gibbons, trustee of the property of Chicago R. I. & P. Ry. Co., and Missouri, K. & T. Ry. Co., with him on the brief.
 James J. McGannon, Wichita, Kan. (Carol B. Bonebrake, Topeka, Kan., and Patrick J. Regan, Regan & McGannon, Wichita, Kan., with him on the brief), for defendants-appellees.
 Before McWILLIAMS, BREITENSTEIN, and DOYLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs-Appellants, the several Railroads, filed four separate actions in the United States District Court for Kansas seeking declaratory and injunctive relief under 49 U.S.C. § 11503(c) which grants jurisdiction to district courts to prevent a violation of § 11503(b).[1] The Railroads alleged that the State of Kansas discriminated against rail transportation in assessing and collecting property taxes in violation of § 11503(b).
 
 
 2
 The four cases have been consolidated, and the Railroads have sought to enjoin the appellees and the County Treasurers of the 98 Counties of the State of Kansas in which their rail property is located, from collecting property taxes in excess of what the Railroads believe they owed for the first half of their 1980 property taxes. The district court denied the Railroads' request for a preliminary injunction. It held that the Railroads had failed to make a sufficient showing that they would suffer irreparable injury, and that the threatened injury to the Railroads would not outweigh the damage to the State of Kansas which would result from the proposed injunction. After the Railroads' motion to reconsider was denied by the trial court, this court granted an emergency motion for injunction pending appeal pursuant to Rule 8 of the Fed.R.App.P.
 
 
 3
 The present appeal considers the merits of the denial by the district court of the Railroads' motion for preliminary injunction. We conclude that the injunction should have been granted.
 
 I. HISTORY
 
 4
 The Revised Interstate Commerce Act of 1978, 49 U.S.C.A. § 10101 et seq., recodifies Subtitle IV of Title 49 of the United States Code. Section 11503 of that Act recodifies Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4-R Act, originally codified at 49 U.S.C. § 26c (1976).
 
 
 5
 The legislative purpose of the Revised Interstate Commerce Act was to "restate, without substantive change, laws enacted before May 16, 1978, that were replaced by these sections. These sections may not be construed as making a substantive change in the laws replaced." 49 U.S.C.A. at p. 1. This legislative purpose is strongly enunciated in the legislative history of the Act. House Report No. 95-1395, 1978 U.S. Code Congressional and Administrative News, pp. 3009 et seq., specifically pp. 3013, 3016, 3018, 3019;[2] 124 Congressional Record No. 151, Senate Hearings Sept. 25, 1978, pp. 16059-60 (Senator Paul Hatfield stated as follows: "Thus by enacting (this law) we are not making any new law; we are merely making existing law more understandable." For this reason, no Senate Report was filed). Therefore, any substantive conflicts between § 306 of the 4-R Act and 49 U.S.C. § 11503 must be resolved in favor of the meaning of § 306 of the 4-R Act.
 
 
 6
 Section 306 of the 4-R Act reads in pertinent part as follows:
 
 
 7
 (2) ... the district courts of the United States shall have jurisdiction, without regard to amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive injunctive relief, interim equitable relief and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section, except that ... (c) no relief may be granted under this section unless the ratio of assessed value to true market value, with respect to transportation property, exceeds by at least 5 per centum the ratio of assessed value to true market value, with respect to all other commercial and industrial property in the same assessment jurisdiction;
 
 
 8
 The corresponding portion of § 11503(c) of the Revised Interstate Commerce Act provides that:
 
 
 9
 ... a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction....
 
 
 10
 The Historical and Revision notes to that section state that "(t)he words 'such mandatory or prohibitive' and 'interim equitable relief' are omitted as unnecessary.... The word 'prevent' is substituted for 'prevent, restrain, or terminate' to eliminate redundancy...."
 
 
 11
 II. THE ACT IS TO BE INTERPRETED IN LIGHT OF ITS PURPOSE
 
 
 12
 It cannot be disputed that § 11503(c), read in the light of § 306 of the 4-R Act and the legislative history and purpose of the Revised Interstate Commerce Act, is specific and clear in authorizing the district court to grant injunctive relief to prevent, restrain, or terminate violations of § 11503(b) of the Act. This court stated in Shadid v. Fleming, 160 F.2d 752, 753 (10th Cir. 1947), that in such a case the discretion of the trial court in issuing or withholding an injunction is to be "exercised in light of the objectives of the Act." The court is to be guided by the primary objectives of the statute involved, using public interest standards rather than private litigation requirements. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944).
 
 
 13
 The objectives of § 11503 are to be determined according to the purposes of § 306 of the 4-R Act, which § 11503 purports to recodify. That purpose is stated as follows:
 
 
 14
 ... to eliminate the longstanding burden on interstate commerce resulting from discriminatory state and local taxation of common carrier transportation property.... Substantively (this section) would amend the Interstate Commerce Act to declare unlawful, as an unreasonable and unjust discrimination against and an undue burden upon interstate commerce, a state or local tax rate, assessment, or collection upon the transportation property of a common or contract carrier at a higher level than upon property in the same taxing district. Procedurally it would provide a remedy in the Federal courts for common and contract carriers against the collection of the excessive portion of any tax based upon such unlawful assessment of rate.
 
 
 15
 S. Report No. 91-630, 91st Cong., 1st Sess. (1969) (emphasis supplied).
 
 
 16
 When the trial court weighed the damage to be suffered by the Railroads against the damage to be suffered by the State treasury, it did not exercise its discretion to grant or deny the injunction in light of the purposes of the Interstate Commerce Act. Because of this the trial court abused its discretion in denying the injunction.
 
 III. UNNECESSARY TO PROVE IRREPARABLE HARM
 
 17
 Moreover, it is not necessary that the Railroads show that they will suffer irreparable harm if the injunction is denied. When the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown. Referring expressly to § 306 of the 4-R Act, the court in State of Tennessee v. Louisville and Nashville R.R. Co., 478 F.Supp. 199, 210 (M.D.Tenn.1979), stated:
 
 
 18
 Since Congress has expressly authorized federal courts to grant injunctive relief in furtherance of the express purposes of Section 306, it is not required that irreparable harm or inadequacy of legal remedies first be shown. United States v. City and County of San Francisco, 310 U.S. 16, 30, 60 S.Ct. 749, 757, 84 L.Ed. 1050 (1940).
 
 
 19
 In this case, the court below disagreed with the above statement. The trial court found that the rule stated in Tennessee was limited to situations where the statute in question protects the public health. Order, Dec. 3, 1980, p. 4, n.6. We disagree. The rule has also been applied to statutes which do not protect the public health, such as the Agricultural Adjustment Act of 1933 (American Fruit Growers, Inc., v. United States, 105 F.2d 722, 725 (9th Cir. 1939)); the Civil Aeronautics Act of 1938 (Civil Aeronautics Board v. Modern Air Transport, Inc., 81 F.Supp. 803, 806 (S.D.N.Y.1949) aff'd. 179 F.2d 622 (2d Cir. 1950)); the Commodity Exchange Act (Commodity Futures Trading Commission v. Hunt, 591 F.2d 1211, 1220 (7th Cir. 1979), cert. denied, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290, reh. den. 444 U.S. 888, 100 S.Ct. 189, 62 L.Ed.2d 122); the Emergency Price Control Act of 1942 (Shadid v. Fleming, supra; Henderson v. Burd, 133 F.2d 515, 517 (2nd Cir. 1943)); the Interstate Commerce Act (Texas & P. Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, 273-4 (1926); Long Island Railroad Co. v. New York Central R. Co., 185 F.Supp. 673, 677 (E.D.N.Y.1960), aff'd 281 F.2d 379 (2nd Cir. 1960)); the Labor Management Relations Act (Davis v. Huttig Sash and Door Co., 288 F.Supp. 82 (W.D.Okla. 1968); Wirtz v. Harper Buffing Machine Co., 280 F.Supp. 376 (D.Conn. 1968)); the Organized Crime Control Act of 1970 (United States v. Cappetto, 502 F.2d 1351, 1358-9 (7th Cir. 1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975)); The Postal Act (United States Postal Service v. Beamish, 466 F.2d 804, 806 (3rd Cir. 1972)); and the Securities Act of 1933 and Securities Exchange Act of 1934 (Securities and Exchange Comm. v. Torr, 87 F.2d 446 (2nd Cir. 1937); Securities and Exchange Comm. v. R. J. Allen and Assoc., Inc., 386 F.Supp. 866, 875 (S. D. Fla. 1974); Securities and Exchange Comm. v. Bennett and Co., 207 F.Supp. 919, 923 (D. N.J. 1962); Securities and Exchange Comm. v. J. & B. Industries, Inc., 388 F.Supp. 1082, 1084 (D. Mass. 1974); Securities and Exchange Comm. v. General Refractories Co., 400 F.Supp. 1248, 1254 (D. D.C. 1975)).
 
 
 20
 An analogy may be made between the wording of § 306 of the 4-R Act and the wording of many of the statutes involved in the cases cited above. For example, under §§ 10(j) and 10(l ) of the Labor Management Relations Act, 29 U.S.C. §§ 160(j) and (l ), the district court has power to grant injunctive relief when presented with an unfair labor charge. The courts have interpreted these statutes as meaning that an injunction may be granted where there is reasonable cause to believe that an unfair labor practice has been committed. See e. g.: National Labor Relations Board v. Acker Industries, Inc., 460 F.2d 649 (10th Cir. 1972); Seeler v. Trading Post, Inc., 517 F.2d 33 (2nd Cir. 1975); Sachs v. Local 48, Journeymen and Apprentices, 454 F.2d 879 (4th Cir. 1972) ("probable cause"); Local Joint Board, Hotel and Restaurant Employees v. Sperry, 323 F.2d 75 (8th Cir. 1963); Retail, Wholesale and Department Store Union v. Rains, 266 F.2d 503 (5th Cir. 1959); AFTRA v. Getreu, 258 F.2d 698 (6th Cir. 1958).[3] Similarly, where the trial court finds reasonable cause to believe that a violation of § 11503(b) has been, or is about to be, committed, an injunction should be granted to prevent that violation. As we stated in Shadid v. Fleming, supra, 160 F.2d at 753:
 
 
 21
 Where an injunction is authorized by statute it is unnecessary for plaintiff to plead and prove the existence of the usual equitable grounds, irreparable injury and absence of an adequate remedy at law. It is enough if the requirements of the statute are satisfied. (citations omitted)
 
 
 22
 The purpose of a preliminary injunction is to preserve the status quo. Penn v. San Juan Hospital, Inc., 528 F.2d 1181 (10th Cir. 1975). If the railroads are forced to pay the full amount of their assessed taxes to the State of Kansas, the status quo would not be maintained.
 
 
 23
 The trial court stated that "the court is mindful that plaintiffs will probably prevail on the merits." Order, Dec. 3, 1980, p. 17. In light of that finding, the court should have granted the preliminary injunction to preserve the status quo.[4]
 
 
 24
 We agree that under United States v. Brown, 331 F.2d 362 (10th Cir. 1964), the district court's decision to deny the preliminary injunction may only be overturned if the court abused its discretion in reaching that decision. We hold that in applying traditional equitable criteria to determine whether to grant or deny an injunction authorized by statute that the court abused its discretion.
 
 IV. THE MAJOR ISSUE IS ASSESSMENT
 
 25
 Defendants maintain that the Secretary of Revenue of the State of Kansas, the Director of Property Valuation of the Department of Revenue of the State of Kansas, and the Department of Revenue of the State of Kansas are not the proper party defendants to this action, since these defendants have no authority under Kansas law to collect the Railroads' ad valorem taxes. Defendants maintain that the County Treasurers collect such taxes, and that the County Treasurers are not agents of these defendants or in "active concert or participation" with these defendants within the meaning of Rule 65(d), Fed.R.Civ.P. Defendants' argument misses the point, however.
 
 
 26
 49 U.S.C. § 11503(b) makes it a violation of the Interstate Commerce Act to assess rail transportation property at higher values than other commercial and industrial property, and/or to levy or collect taxes on rail transportation property which are based on improper assessments. The major issue involved in a § 11503(b) charge, therefore, concerns the assessment of the Railroads' transportation property, since the taxes levied and collected will be based on that assessment. The named defendants are responsible for assessing the plaintiffs' property, and as such are the proper parties before the court.
 
 
 27
 V. UNNECESSARY TO PROVE POSITIVELY THAT APPELLANTS WILL SUCCEED
 
 
 28
 Defendants maintain that the plaintiffs have not shown that the ratio of assessed value to true market value of rail transportation property exceeds the ratio of other commercial and industrial property by at least 5 percent, and that, therefore, a preliminary injunction should not be granted. The district court found that while it was not certain that the Railroads would prevail on that contention, it was likely that they would do so. The district court stated that the Railroads had not positively shown that a violation had occurred, and mentioned that it needed more evidence on the question, which could be presented when the case was fully before the court.
 
 
 29
 It is not necessary that plaintiffs show positively that they will prevail on the merits before a preliminary injunction may be granted. As this court stated in Valdez v. Applegate, 616 F.2d 570, 572 (10th Cir. 1980), "(t)he determination of a motion for a preliminary injunction and a decision on the merits are different." It is only necessary that plaintiffs establish a reasonable probability of success, and not an "overwhelming" likelihood of success, in order for a preliminary injunction to issue. Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980). Preserving the status quo is quite different from finally determining the cause itself. Penn v. San Juan Hospital, supra, 528 F.2d at 1185. When considering whether an injunction should lie under § 11503(c), the court must determine whether there is "reasonable cause" to believe that a violation of § 11503(b) has occurred or is about to occur. The district court determined that plaintiffs had shown that there was likelihood that they would prevail on the merits, and this court will not disturb that finding. For the reasons given, therefore, we hold that the preliminary injunction should have been granted.
 
 
 30
 The order of the district court denying the preliminary injunction is set aside and held for naught. The case is remanded to the district court with directions to enter forthwith a preliminary injunction allowing payment of those parts of the tax which are not contested by the railroads to the respective counties and the deposit of the remainder of the tax in the registry of the United States District Court for the District of Kansas with such directions for the investment of the funds in securities of the United States as the district court may deem proper. It is further ordered that the district court shall give the trial of this case on the merits the highest priority possible on the state of its docket. The mandate shall issue forthwith.
 
 
 
 [1]
 49 U.S.C. § 11503(b) provides:
 (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
 (1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
 (2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.
 (3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.
 (4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title.
 
 
 [2]
 The House Report states, at p. 3018:
 Substantive change not intended. Like other codifications undertaken to enact into positive law all titles of the United States Code, this bill makes no substantive change in the law. It is sometimes feared that mere changes in terminology and style will result in changes in substance or impair the precedent value of earlier judicial decisions and other interpretations. This fear might have some weight if this were the usual kind of amendatory legislation where it can be inferred that a change of language is intended to change substance. In a codification statute, however, the courts uphold the contrary presumption: the statute is intended to remain substantively unchanged. (Numerous authorities are cited).
 
 
 [3]
 Some courts have gone further, and held that the district court should grant an injunction whenever there is "non-frivolous cause to believe" that an unfair labor practice has been committed. See e. g.: Schauffler v. Local 291, International Longshoremen's Ass'n., 1292 F.2d 182 (3rd Cir. 1961); Hoffman v. Cement Masons Local 337, 468 F.2d 1187 (9th Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2269, 36 L.Ed.2d 964 (1973) (by implication); Boire v. International Board of Teamsters, 479 F.2d 778 (5th Cir. 1973), reh. den. 480 F.2d 924 (1973). We need not consider this distinction herein, however, since the standard of "reasonable cause" was found to be met. The trial court found that it was likely in this case that the Railroads would succeed on the merits of the case
 
 
 [4]
 Defendants' argument that the plaintiffs cannot raise this issue on appeal since they failed to do so in the proceedings below is not on point. We are not concerned in this appeal with a factual issue not raised below, or with a completely new area of the law. We are concerned with the standards to be applied in granting or denying the plaintiffs' motion for a preliminary injunction. The district court recognized, and rejected, the standard which this court now holds should be applied. To ask that this court be precluded from clarifying the proper standard to be applied when the trial court determines whether to grant or deny a motion for an injunction because the plaintiffs failed to make the proper argument during the proceedings below is absurd