934 F.2d 1064
 20 Fed.R.Serv.3d 475
 BURLINGTON NORTHERN RAILROAD COMPANY, Plaintiff-Appellant,
v.
DEPARTMENT OF REVENUE OF The STATE OF WASHINGTON; William
R. Wilkerson, in his capacity as Director of the
Department of Revenue of the State of
Washington, Defendants-Appellees.
 No. 89-35830.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 8, 1990.
Decided May 24, 1991.
 
 Kurt W. Kroschel, Bellevue, Wash., Gregory G. Fletcher, Laughlin, Halle, Gibson & McBride, Memphis, Tenn., James W. McBride, Laughlin, Halle, Gibson & McBride, Washington, D.C., for plaintiff-appellant.
 Teresa M. Morris, James P. Richmond, Asst. Attys. Gen., Olympia, Wash., for defendants-appellees.
 Marilyn J. Harbur, Asst. Atty. Gen., Dept. of Justice, Salem, Or., for amicus curiae.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, BEEZER and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 
 1
 Burlington Northern Railroad Company ("Burlington") sought preliminary and permanent injunctions to prohibit the Department of Revenue of the State of Washington (the "DOR") from collecting ad valorem taxes on Burlington's personal property. Burlington alleged that the taxes were discriminatory, in violation of section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, codified at 49 U.S.C. Sec. 11503. The district court transferred the entire case to a special master under Fed.R.Civ.P. 53. The master concluded that Burlington had not established discriminatory taxation, and refused to grant the preliminary injunction. The district court affirmed. We have jurisdiction under 28 U.S.C. Sec. 1292(a)(1), and we reverse.
 
 
 2
 * Statutory Framework
 
 
 3
 In 1976, Congress set out to restore the financial stability of the United States railway system. Burlington N. R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454, 457, 107 S.Ct. 1855, 1857, 95 L.Ed.2d 404 (1987). Concluding that "railroads are over-taxed by at least $50 million each year," Congress passed section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. 94-210, Sec. 306, 90 Stat. 31, 54 (1976) (current version at 49 U.S.C. Sec. 11503 (1988)) (the "Act").[1] Section 11503(b) of the Act provides:(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
 
 
 4
 (1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
 
 
 5
 (2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.
 
 
 6
 (3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.
 
 
 7
 (4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission....
 
 
 8
 49 U.S.C. Sec. 11503(b) (1988).
 
 
 9
 Section 11503(c) is an exception to the Tax Injunction Act, 28 U.S.C. Sec. 1341 (1988). The Tax Injunction Act prohibits district courts from enjoining the assessment, levy, or collection of any state tax if a speedy and efficient state court remedy exists. Oklahoma Tax Comm'n, 481 U.S. at 457-58, 107 S.Ct. at 1857-58. Section 11503(c) provides that, "[n]otwithstanding [28 U.S.C. Sec. 1341] ..., a district court ... has jurisdiction ... to prevent a violation" of Sec. 11503(b). The corresponding provision of section 306 states that "the district courts ... shall have jurisdiction ... to grant such mandatory or prohibitive injunctive relief, interim equitable relief and declaratory judgments as may be necessary to prevent, restrain or terminate" violations of this section. Pub.L. 94-210, Sec. 306, sec. 28(2).
 
 II
 Washington's Ad Valorem Taxation Scheme
 
 10
 All real and personal property in Washington except that expressly exempted is subject to ad valorem taxation and must be valued at 100 percent of its fair market value. Wash.Rev.Code Secs. 84.36.005, 84.40.020, 84.40.030. Washington exempts from ad valorem taxation certain classes of business personalty, including commercial vessels and fishing boats, growing crops, agricultural products, ships and vessels under construction, business inventory, nursery stock, and cargo containers used in ocean commerce. Wash.Rev.Code Secs. 84.36.080(1), 84.40.030(3), 84.36.470, 84.44.060, 84.36.079, 84.36.477, 84.36.105.
 
 
 11
 The DOR annually assesses the operating property of railroads and public utilities for purposes of levying state ad valorem property taxes. Wash.Rev.Code Sec. 84.12.270. After the value of the railroad's system-wide operating property is determined, the DOR allocates a percentage to the State of Washington, and apportions this percentage among the counties in which the railroad property is located. Wash.Rev.Code Secs. 84.12.300, 84.12.360. The counties then collect the taxes from the railroad.
 
 
 12
 Because railroad property is reassessed annually, it is valued at 100 percent of fair market value. Most other commercial and industrial property, on the other hand, is assessed by the counties themselves, which do not re-value annually. As a result, non-railroad commercial and industrial property is often assessed at below fair market value. To compensate for this discrepancy, the DOR "equalizes" the assessed value of railroad and non-railroad property in each county. This is accomplished by determining, for non-railroad property, the ratio of assessed value to fair market value (apparently by studying the ratio of assessed value to selling price of selected property), and adjusting the assessment value of railroad property to reflect a similar ratio.
 
 
 13
 For 1988, the DOR valued Burlington's system-wide operating property at $5.1 billion, apportioned $430,104,719 to Washington, and, after county-by-county equalization, assessed Burlington's statewide property at $412,414,115. Burlington's post-equalization assessment, then, was approximately 95 percent of its pre-equalization assessment. Burlington's 1988 taxes total $5.6 million, in contrast to its 1987 taxes of $3.7 million.
 
 III
 Proceedings Below
 
 14
 Burlington's 1988 taxes were payable in two equal installments, one due in April 1989 and one due in October 1989. Burlington paid the April half but withheld the half due in October. On September 28, 1989, Burlington filed a complaint seeking preliminary and permanent injunctions restraining the DOR from collecting the second installment of approximately $2.72 million. It alleged that the DOR (1) violated section 11503(b)(1) by overvaluing Burlington's system-wide operating property by about $2.6 billion, (2) violated section 11503(b)(1) by failing to equalize Burlington's assessment ratio with that of other commercial and industrial property, and (3) violated section 11503(b)(4) by taxing Burlington's personalty while exempting other classes of commercial and industrial personalty.
 
 
 15
 By sua sponte order, without consulting either party, the district court transferred the entire case to a special master. After hearing oral argument, the master denied Burlington's preliminary injunction motion. Citing Trailer Train Co. v. State Board of Equalization, 697 F.2d 860, 869 (9th Cir.), cert. denied, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983), and Lennen I, 640 F.2d 255, the master concluded that traditional equitable criteria do not govern the issuance of preliminary injunctions under section 11503 and that Burlington was entitled to a preliminary injunction if it established "reasonable cause to believe" that section 11503 had been or was about to be violated. After reviewing the evidence, the master concluded
 
 
 16
 at least preliminarily, that [Burlington] in its valuation applied a significantly different methodology than the State did and did not include properties and adjustments included by the State. I cannot tell from this whose valuation is correct, and am not convinced that [Burlington] has established a prima facie case of overvaluation and discrimination in violation of Section 306.
 
 
 17
 Therefore, without weighing the evidence and without concluding from the affidavits themselves what weight to be given the various experts and their opinions, I can only conclude that I am not convinced that there is reasonable cause to believe that Section 306 has been violated or is about to be violated on any of [Burlington's] claims.
 
 
 18
 Burlington appealed the master's order, and the district court affirmed. On appeal, Burlington argues that the district court abused its discretion by referring the entire case to a special master. Burlington also claims that the special master was correct in applying the "reasonable cause to believe" standard rather than the traditional preliminary injunction test. Because we conclude that the district court abused its discretion in referring the case to a special master, we need not address the preliminary injunction standard.
 
 IV
 
 19
 Burlington's Objection to the Order of Reference
 
 
 20
 We first address the DOR's contention that Burlington waived its right to object to the order of reference by (1) failing to move for revocation of the order after filing an objection, and (2) failing to note the objection for consideration by Judge Tanner pursuant to Local Rule CR 6. Burlington argues that parties may object to orders of reference either by filing objections or by moving for revocation. Under the circumstances of this case, we agree with Burlington.
 
 
 21
 The matter was originally assigned to Judge Bryan. By sua sponte order entered on October 10, 1989, Judge Bryan transferred the case to Judge Tanner and, at the request of Judge Tanner, appointed Edward M. Lane, Esq. as special master pursuant to Fed.R.Civ.P. 53. Apparently, Judge Bryan believed that Judge Tanner was more equipped to handle the complex issues in the case because he was also presiding over ACF Industries, Inc., et al. v. Dept. of Revenue, No. C89-174T, a "related case" offering "commonalities of the questions of law and fact."
 
 
 22
 On October 23, 1989, Burlington filed its Plaintiff's Objection to Reference to Special Master, but neither noted its objection for consideration by Judge Tanner nor filed a motion to revoke the order of reference. The court issued no ruling on the objection. On October 26, the master heard oral argument and, on November 7, denied Burlington's preliminary injunction motion.
 
 
 23
 We must decide whether Burlington's objection to the order of reference was timely made and whether it was adequately preserved for appeal. A party should "make known his objection to the court at or prior to the reference" if possible, or, if not possible, move to revoke the reference. 5A J. Moore & J. Lucas, Moore's Federal Practice p 53.05 (2d ed. 1948 printing 1989). Absent "some such objection," proceeding before the master constitutes waiver of any objection. Id. "If a timely and proper objection has been made and overruled," an objecting party may appeal. Id.
 
 
 24
 "[A]n objection to the appointment of a special master must be made at the time of the appointment or within a reasonable time thereafter or the party's objection is waived." Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1410 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991). In the past, we have held an objection waived because the party had made no objection in the district court. See id.; Johnson Controls v. Phoenix Control Sys., 886 F.2d 1173, 1176 (9th Cir.1989) (appellant "waived any objections it had to the appointment of a master by failing to raise the issue, or moving to have the reference revoked"); Spaulding v. University of Washington, 740 F.2d 686, 695 (9th Cir.), cert. denied, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984), overruled on other grounds, Atonio v. Wards Cove Packing Co., 810 F.2d 1477 (9th Cir.1987) (objection waived if raised for the first time on appeal); Diamond Door Co. v. Lane-Stanton Lumber Co., 505 F.2d 1199, 1206 (9th Cir.1974) (objection waived where party neither moved to vacate order nor objected until appeal); see also Cruz v. Hauck, 515 F.2d 322, 331 (5th Cir.1975), cert. denied, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976) (objection waived where appellants did not object at all in the district court). In Adriana, the appellant did not object to the appointment of the special master until well into the proceedings. Adriana, 913 F.2d at 1410. "Adriana attended numerous meetings, depositions and hearings with the special master regarding discovery" over a period of four months. Id. Under those circumstances, we held that Adriana's objection after this period was not within a reasonable time of the appointment.
 
 
 25
 Similarly, other circuits have held objections waived where a party objected only after the master filed an unfavorable report. See Jenkins v. Sterlacci, 849 F.2d 627, 634 (D.C.Cir.1988); Constant v. Advanced Micro-Devices, 848 F.2d 1560, 1566 (Fed.Cir.), cert. denied, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988); Hill v. Duriron Co., 656 F.2d 1208, 1213 (6th Cir.1981). These cases reflect the courts' desire to avoid rules that provide an incentive to withhold objections until disappointed by an unfavorable result. In Hill, 656 F.2d at 1213, the Sixth Circuit noted:
 
 
 26
 To permit such objections after the [master] makes his findings and recommendations would certainly not serve the cause of judicial economy. Parties who did not prevail before the [master] would routinely seek to have the reference set aside for reasons that either could have been corrected or would have stopped the proceedings if promptly brought to the referring court's attention.
 
 
 27
 Further, the Fifth Circuit in Cruz, 515 F.2d at 331, expressed concern that
 
 
 28
 a party disappointed with a master's report would be able to obtain a "second bite at the apple" by withholding his objection to the reference until after the report.
 
 
 29
 We find this reasoning sound, and consistent with the policy underlying the waiver doctrine.
 
 
 30
 Burlington, however, is not affected by either of these rules. It filed an objection with the district court, and we find it irrelevant that it failed to move for revocation of the order. The cases cited above indicate that objection below by any means--within a reasonable time after the order is entered--suffices to preserve the objection on appeal. Here, because the district court entered the order of reference sua sponte and without notice, Burlington had no opportunity to object or consent before entry. After the order was entered, Burlington objected promptly--thirteen days later, to be exact. Burlington's failure to move for revocation does not negate the effect of its initial objection.
 
 
 31
 We also find it irrelevant that Burlington failed to take affirmative steps to obtain a ruling on its objection prior to the master's preliminary injunction decision. Burlington objected, and that is enough. The objection noted:
 
 
 32
 This reference was made without the consent of the plaintiff, and the plaintiff hereby notes its objection to the reference for the record.
 
 
 33
 ....
 
 
 34
 Plaintiff is filing this objection in order to preserve its rights on appeal with respect to the order of reference. In addition, plaintiff hereby enters a continuing objection to the reference of this case to a Special Master, and a continuing objection to all proceedings before the Special Master and actions taken by the Special Master.
 
 
 35
 Moreover, the objection was filed before the master heard arguments or issued his final decision on the preliminary injunction. Burlington's conduct could not have been motivated by the master's unfavorable decision.[2]
 
 
 36
 The DOR also contends that Burlington's failure to object by motion violates the terms of the order and the Local Rules. We disagree. The order provides that "[a]ny dispute regarding the interpretation of this order, or any request for modification thereto, shall be resolved by [Judge] ... Tanner. The parties should present such disputes ... to the court pursuant to Local Rules CR 6 and 7."[3] The order did not prescribe the procedure for objecting to the order itself. Rather, it assumed the propriety of the reference and prescribed the procedure for seeking "modification" of the order and for raising "disputes" regarding its "interpretation." Accordingly, because Burlington's objection was a direct challenge to the order's legality, we conclude that the objection did not fall within the express language of the order, and hence is not governed by it.
 
 
 37
 Further, we hold the objection was not waived merely because it failed to comply with the Local Rules. The DOR claims that Burlington failed to designate the date the motion was to be noted on the court's motion calendar, as required by Local Rule CR 6. We find this omission irrelevant. As we hold below, the court lacked authority under Fed.R.Civ.P. 53 to issue the order of reference. Therefore, its authority could have come only from Local Rule CR 39.1(f) of the Rules of the United States District Court for the Western District of Washington, which permits appointment of a master upon consent of the parties as an emergency measure to alleviate calendar congestion. The court did not seek, much less obtain, the parties' consent and thus violated Rule 39.1(f) in making the reference. It would be unjust to hold Burlington's objection to the reference waived for failure to object by motion as required by the Local Rules, where the order of reference itself violated the Local Rules.
 
 V
 Propriety of the Reference Order
 
 38
 Burlington argues that the reference order failed to identify exceptional circumstances warranting the reference, and constituted abdication of the district court's decision-making function in violation of Fed.R.Civ.P. 53 and article III of the Constitution. We review the district court's order of reference to a special master for an abuse of discretion. United States v. Suquamish Indian Tribe, 901 F.2d 772, 774 (9th Cir.1990).
 
 
 39
 Before examining the merits of the order, we must determine whether we have jurisdiction to consider it. "Orders of reference to a master are generally interlocutory and not appealable." National Org. For Reform of Marijuana Laws v. Mullen, 828 F.2d 536, 540 (9th Cir.1987). This appeal is from the district court's failure to grant Burlington's preliminary injunction motion. "As a general rule ... we concern ourselves 'only with the order from which appeal is taken,' ... and review other issues only if they are 'inextricably bound up' with the injunction." Marathon Oil Co. v. United States, 807 F.2d 759, 764 (9th Cir.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987) (quoting Yamamoto v. Omiya, 564 F.2d 1319, 1325 n. 11, (9th Cir.1977), and Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, 682 F.2d 802, 805 (9th Cir.1982)); see also Transworld Airlines v. American Coupon Exch., 913 F.2d 676, 680 (9th Cir.1990).
 
 
 40
 Further, "an appeal from an order granting or refusing an injunction brings before the appellate court the entire order, not merely the propriety of injunctive relief...." Barrett v. Smith, 530 F.2d 829, 830 (9th Cir.1975), cert. denied, 425 U.S. 977, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976), quoted in Marathon Oil, 807 F.2d at 764; see also Smith v. Vulcan Iron Works, 165 U.S. 518, 17 S.Ct. 407, 41 L.Ed. 810 (1897); Fentron Indus. v. National Shopmen Pension Fund, 674 F.2d 1300, 1304 (9th Cir.1982); Long v. Bureau of Economic Analysis, 646 F.2d 1310, 1317-18 (9th Cir.) (per curiam), vacated on other grounds, 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981). Thus, we may decide the propriety of the reference order only insofar as it is inextricably bound up with the preliminary injunction order. Here, the entire case was referred to the special master. "The legality and enforceability of the order [of reference] is inextricably bound up with the injunction that requires [Burlington] to comply with the [reference]." Marathon Oil, 807 F.2d at 764. Therefore, the denial of the preliminary injunction is logically indivisible from the order of reference and we review the propriety of the entire order.
 
 
 41
 Reference to a master "shall be the exception and not the rule" and, "save in matters of account and of difficult computation of damages, ... shall be made only upon a showing that some exceptional condition requires it." Fed.R.Civ.P. 53(b). Although "[m]asters may ... be appointed because of the complexity of litigation," we strictly apply Rule 53(b) to require a showing of exceptional conditions to justify the appointment. See Suquamish Indian Tribe, 901 F.2d at 775; White v. General Svcs. Admin., 652 F.2d 913 (9th Cir.1981). We may consider circumstances beyond those recited by the reference order. La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957).
 
 
 42
 Rule 53 contemplates that the master will assist the court with specific tasks and exercise necessary power. "A district court has discretion in appointing a special master, and may decide the extent of his duties." Johnson Controls, 886 F.2d at 1176. In non-jury actions, the district court "shall accept the master's findings of fact unless clearly erroneous," Fed.R.Civ.P. 53(e)(2), but considers conclusions of law de novo. Fed.R.Civ.P. Rule 53(e)(4).
 
 
 43
 The use of masters, however, is restricted to situations where they are necessary " 'to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause....' " La Buy, 352 U.S. at 257, 77 S.Ct. at 314 (quoting Ex parte Peterson, 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920)). A special master may not "displace the court." Id. "The courts have tended to read [Rule 53] narrowly, closely circumscribing the range of circumstances in which reference to a master is appropriate." In re Armco, 770 F.2d 103, 105 (8th Cir.1985).
 
 
 44
 Here, the order of reference was made "[a]t the request of Judge Tanner and in the interest of judicial economy ... pursuant to Fed.R.Civ.P. 53." The master was given "all powers and privileges normally exercised by a United States District Court Judge, in presiding over litigation ... including, but not limited to, those specified in Rule 53(c) and (d), Fed.R.Civ.P." The master's orders were to be final unless appealed to the district court within 15 days of their entry.
 
 
 45
 The master was required to "prepare and complete a draft report" after trial "setting forth findings of fact and conclusions of law." The district court, after a hearing, could adopt, modify, or reject the report, receive further evidence, or resubmit the report with instructions to the master. After the report was received and the parties' objections were considered, the district court would "make the final determination as to the matters herein at issue."
 
 
 46
 After hearing oral argument and considering the evidence, the master denied Burlington's motion for preliminary injunction and Burlington appealed to the district court. The court affirmed in a brief order, which stated, "Having considered the record and files herein, the Order of the Special Master Denying Plaintiff's Motion for Preliminary Injunction is AFFIRMED."
 
 
 47
 We conclude that the circumstances of this case were not "exceptional" and did not justify the wholesale reference of the entire case to a master. Further, the district court's "rubber stamp" of the master's order is an inexcusable abdication of judicial responsibility and a violation of article III of the Constitution.
 
 
 48
 This case is governed by the Supreme Court's holding in La Buy. In that case, the Court approved the Seventh Circuit's authority to issue a writ of mandamus requiring the district court to vacate two reference orders. The orders referred two antitrust cases to a special master for trial, instructed the master to take evidence and report with findings and conclusions to the court, and contemplated that the master would oversee the cases through trial.
 
 
 49
 The Court rejected the judge's claim that calendar congestion, case complexity, and anticipation of a lengthy trial constituted exceptional circumstances warranting the reference. Indeed, it believed that complexity was "an impelling reason for trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an ad hoc basis and ordinarily not experienced in judicial work." La Buy, 352 U.S. at 259, 77 S.Ct. at 315. It noted that, in light of the judge's familiarity with the cases and experience in the area, he could dispose of the cases more efficiently than anyone else. The Court concluded that the orders of reference constituted an abuse of power under Rule 53(b) because
 
 
 50
 [t]hey amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation.
 
 
 51
 The use of masters is "to aid judges in the performance of specific judicial duties ..." and not to displace the court.
 
 
 52
 Id. at 256, 77 S.Ct. at 313 (citation omitted). Finally, the Court noted that the Seventh Circuit was justified in issuing the writ because of evidence of a pattern of excessive references in that district.
 
 
 53
 In response to this reasoning, the DOR relies on Civil Aeronautics Bd. v. Carefree Travel, 513 F.2d 375 (2d Cir.1975), and In re Armco, 770 F.2d 103 (8th Cir.1985). We find these cases distinguishable. In Carefree Travel, the trial judge referred portions of a case to a magistrate because the "proceedings had become sufficiently complicated with a sufficient number of parties and different motions that it appeared as though it might have to be postponed so as not to interfere with the trial of a criminal matter where the defendant was in custody."[4] Carefree Travel, 513 F.2d at 382. The Second Circuit held that the trial court's inability to hear the lengthy testimony due to the impending criminal matter justified reference of the issues raised by a preliminary injunction motion.
 
 
 54
 Unlike the district judge in this case,
 
 
 55
 District Judge Judd ... neither abandoned to the magistrate his prerogatives nor acted simply as a rubber stamp in respect to the magistrate's report. The court made an extensive examination of the evidence in its own right on the basis of depositions, affidavits and testimony that it heard, and while it confirmed all eight of the magistrate's findings of fact it made further findings on its own, incorporated in its opinion, and confirmed only three of the six conclusions arrived at by the magistrate. The result reached by the court was exactly the contrary of that recommended by the magistrate....
 
 
 56
 Id. at 383. The judge in Carefree Travel only delegated power to make initial findings as to the motion, not to decide the entire case. Judge Tanner, in contrast, "delegat[ed] the judicial decision making function as to the entire case ..." Id. at 382.
 
 
 57
 In re Armco similarly distinguished between properly letting a master hear and make recommendations on pre-trial motions (summary judgment and dismissal) and improperly letting him preside at trial. The court noted:
 
 
 58
 We believe that the district court erred in granting the master authority to preside at trial on the merits of this case. We also believe, however, that the district court acted properly in granting the master the broad authority to supervise and conduct pretrial matters, including discovery activity, the production and arrangement of exhibits and stipulations of fact, the power to hear motions for summary judgment or dismissal and to make recommendations thereto.
 
 
 59
 In re Armco, 770 F.2d at 105.
 
 
 60
 Here, Burlington insisted that a decision be made on its preliminary injunction motion within one month of its filing. In addition, the DOR points to the public interest in prompt resolution of the motion--so that Washington could make fiscal plans. These did not constitute exceptional conditions warranting the reference order. Indeed, we can think of no circumstances to justify so extreme a delegation of judicial power as occurred here. The circumstances recited in the order--Judge Tanner's request and judicial efficiency--are insufficient.[5] In fact, the reference lessened judicial efficiency, given that the case was transferred to Judge Tanner because he was considering another case involving similar facts and issues, and thus offered unique expertise and the capacity for uniform treatment. Applying the standard articulated in La Buy, we conclude that the order granted the master excessive power over the preliminary injunction motion. It authorized him to issue an order that would become final if not appealed to the district court under a deferential standard of review. Moreover, the district court acted as a "mere rubber stamp" for the findings and conclusions of the master. Although the court received memoranda from the parties, in its order it provided no substantive explanation for affirming.
 
 
 61
 In some circumstances, an erroneous reference alone might not require remand. See Adventures in Good Eating v. Best Places to Eat, 131 F.2d 809 (7th Cir.1942) (court of appeals may review master's findings even though the reference order is improper); but cf. Advisory Committee Notes to Rule 53 (implying that noncompliance with rule's provisions could make reference order subject to attack). Because of the number of issues left to be decided in this case as well as their significance, we conclude this case should be remanded to the district court for initial consideration.
 
 VI
 Preliminary Injunction Standard
 
 62
 The special master concluded that "[i]ssuance of preliminary injunctive relief in Section 306 cases is not governed by the traditional equitable criteria applicable in actions between private litigants.... [Burlington] is entitled to a preliminary injunction if its evidence demonstrates 'reasonable cause to believe' that Section 306 has been violated, or is about to be violated." The DOR asserts this conclusion was incorrect, and that the district court should apply the traditional preliminary injunction analysis on remand.[6] Although we need not reach this issue, we note that the special master's conclusion is supported by the existing case law.
 
 
 63
 In Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 869 (9th Cir.), cert. denied, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983), we held:
 
 
 64
 The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief.... Section 11503 clearly falls within this exception because its subsection (c) specifically authorizes a district court to grant injunctive relief to prevent a violation of the statute.
 
 
 65
 (citations omitted) (footnote omitted). In reaching this conclusion, the court relied on the reasoning of Lennen I, 640 F.2d at 258-60. The Lennen court noted that, in light of Congress's clear purpose to "authorize the district court[s] to grant injunctive relief to prevent, restrain, or terminate violations of [section] 11503(b) of the Act," id. at 258,
 
 
 66
 it is not necessary that the Railroads show that they will suffer irreparable harm if the injunction is denied. When the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown.
 
 
 67
 ....
 
 
 68
 .... [W]here the trial court finds reasonable cause to believe that a violation of [section] 11503(b) has been, or is about to be, committed, an injunction should be granted to prevent that violation.
 
 
 69
 Id. at 259-60. We agree with this reasoning.
 
 VII
 Conclusion
 
 70
 We conclude that the district court abdicated its judicial responsibility by referring this matter in its entirety to a special master and acting as a mere rubber stamp for the master's findings and conclusions. Because the district court abused its discretion, the denial of Burlington's motion for a preliminary injunction is
 
 
 71
 REVERSED and REMANDED.
 
 
 
 [1]
 Section 306 was originally codified at 49 U.S.C. Sec. 26c, and its language was "slightly altered" when recodified in the Revised Interstate Commerce Act of 1978, Pub.L. No. 95-473, 92 Stat. 1337 (1978), 49 U.S.C. Sec. 11503 (1988). Oklahoma Tax Comm'n, 481 U.S. at 457 n. 1, 107 S.Ct. at 1858 n. 1. The recodified version "may not be construed as making a substantive change in the laws replaced." Id.; see also Atchison, Topeka and Santa Fe Ry. Co. v. Lennen, 640 F.2d 255, 258 (10th Cir.1981) ("Lennen I "); Atchison, Topeka and Santa Fe Ry. Co. v. Lennen, 732 F.2d 1495, 1497 (10th Cir.1984) ("Lennen II "). "Because the revision was not intended to change the law, we must resolve any substantive conflicts between the original language of Sec. 306 and the language in Sec. 11503 in favor of the original language." Lennen II, 732 F.2d at 1497 (citing Lennen I, 640 F.2d at 258). We will refer to section 306 only where we believe it is in conflict with section 11503. Otherwise, all references to the Act will be to the text of section 11503
 
 
 [2]
 Our holding is limited to the specific circumstances of this case. If the court had given Burlington prior notice of its intention to refer the case and more time to pursue the court's ruling on the objection, Burlington's failure to move for revocation may indeed have constituted a waiver. The clear policy against objection to orders of reference only after unfavorable results leads us to the conclusion that the better practice is to move for revocation immediately after entry of the order, but Burlington's failure to do so is not fatal here given the lack of notice and the unusually short time frame
 
 
 [3]
 Local Rule CR 6, requires, inter alia, that a motion designate the date it is to be noted on the court's motion calendar. Local Rule CR 7 requires that the movant serve and file with the motion a statement of supporting reasons and citations, and provides that " '[m]otions,' as used herein, shall include objections."
 
 
 [4]
 Because the motion involved millions of dollars and affected thousands of airline passengers, the public interest required prompt determination
 
 
 [5]
 Indeed, it is almost impossible to justify the appointment of a master based only on "judicial efficiency." The master here, Mr. Lane, is a practicing attorney with many responsibilities and professional burdens. As the Court pointed out in La Buy, 352 U.S. at 253 n. 5, 77 S.Ct. at 312 n. 5,
 "There is one special cause of delay in getting cases on for trial that must be singled out for particular condemnation, the all-too-prevalent habit of sending matters to a reference. There is no more effective way of putting a case to sleep for an indefinite period than to permit it to go to a reference with a busy lawyer as referee. Only a drastic administrative rule, rigidly enforced, strictly limiting the matters in which a reference may be had and requiring weekly reports as to the progress of each reference will put to rout this inveterate enemy of dispatch in the trial of cases."
 (quoting Vanderbilt, Cases and Materials on Modern Procedure and Judicial Administration, pp. 1240-41 (1952)).
 
 
 [6]
 Normally, "[a] party seeking a preliminary injunction must fulfill one of two standards, described in this circuit as 'traditional' and 'alternative.' " Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir.1987) (quoting American Motorcyclist Ass'n v. Watt, 714 F.2d 962, 965 (9th Cir.1983). As we noted in Cassim,
 Under the traditional standard, a court may issue preliminary relief if it finds that (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.
 Id. (citations omitted). " 'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.' " Hunt v. National Broadcasting Co., 872 F.2d 289, 293 (9th Cir.1989) (quoting United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174 (9th Cir.1987)).